## Law Office of Benjamin J. Hinerfeld

| | | |
|---|---|---|
| 1528 Walnut Street, Ste 1100 | 9 Stoddard Street | 447 Broadway, 2nd Floor |
| Philadelphia, PA 19102 | Plymouth, MA 02360 | New York, NY 10013 |
| (Tel.) 215.694.7432 | (Tel) 508.591.0385 | (Fax) 215.689.2423 |

Ben@Hinerfeldlaw.com   Licensed in MA, PA, NY, NC, NJ, DE (inactive)

August 4, 2025

*Via Electronic Filing*
Hon. James M. Wicks
United States District Court, Eastern District of New York
100 Federal Plaza
Central Islip, NY 11722

> **Re: *Y.E. and M.K. o/b/o M.K. v. Hewlett Woodmere Union Free Sch. Dist.,* No 2:25-1481-JMA-JMW - Motion to Supplement the Administrative Record. Parents' Reply brief.**

Dear Judge Wicks,

The goal of an IDEA due process hearing, SRO review, and judicial review is, ultimately, to get it right. Here, the SRO got it wrong. He relied on new, incorrect facts to support dispositive arguments the District itself never made. BCBA Nicole Iannarone's affidavit would put the SRO's new, incorrect facts, which Parents had no reason or opportunity to challenge, in proper context.

The District argues that Parents are "patching holes" and filling "perceived gaps" in their case (Dist. Br. at 2, 7), introducing "duplicative" or "cumulative" testimony (*id*. at 2, 4), relitigating mere "legal and substantive disagreements" (*id*. at 3), "recasting" arguments already decided as "factual disputes" (*id.* at 4), seeking an impermissible "trial *de novo*" (*id*. at 6), attempting to "frustrate the exhaustion requirement" (*id*.), and proposing a course of action that will cause it "acute and manifest" prejudice. *Id*. at 7.

Parents addressed the bulk of these points in their opening brief and generally refer the Court there.  The short response, however, is that the SRO unfairly *changed* the record. The proposed supplemental evidence does not relitigate the merits; rather, it completes the record so the Court can fairly and independently evaluate the merits.

1. **The District does not dispute Parents' key point.**

The District does not dispute Parents' key point: The SRO made his decision based on four incorrect, *sua sponte* factual claims.[1]  It does not claim that it has ever argued: (i) that ABA is an "individual" service; (ii) that Dr. Marks failed to object to its recommended program; (iii) that BCBAs all have a background and expertise in autism; or (iv) that a BCBA alone would

---

[1] *See* Opening Br. at 5 and n.27 (citing SRO Op. at 18 n.12).

have addressed M.K.'s need for ABA programming. Instead, it accuses Parents of attempting "to parse the SRO's analysis." Dist. Br. at 7-8. "Parse" means "to examine in a minute way: analyze critically."[2] Here, Parents parsed the paragraph in question because the SRO made so many mistakes, in so few words, to decide such a major issue.

2. **At trial, District witnesses did not testify in detail about the M.K.'s recommended "ABA" program for the 2023-2024 school year.**

The District directs the Court to roughly ten pages of testimony to prove that its witnesses testified "in detail regarding how ABA principles and individualized behavior supports ***would be provided to M.K. in the recommended classroom setting its ABA program***" for the 2023-2024 school year. Dist. Br. at 3 (emphasis added). Since this issue was hotly litigated, the argument goes, Parents should have introduced Iannarone's testimony at trial.

Parents invite the Court to review the District's cited testimony. It does not prove what the District claims. *See* Exhibit C (Excerpts of testimony cited by District). *First*, as explained in Parents' opening brief, Ms. Granelli (the first witness cited), did mention certain ABA buzzwords on direct examination; however, on cross-examination, she could not explain what they meant. *See* Ex. C at 84:2-17 (T85) (Granelli cross-exam highlighted in blue); Parents' Br. at 2-3 and n.19.

*Second*, Ms. Mezrahi, in the three passages quoted, testified about how her class implemented M.K.'s 2022-2023 IEP, ***not the 2023-2024 IEP at issue here***. The District, however, starts its citation immediately *after* the lines showing that her testimony was about 2022-2023:

> Q: To what extent, if you recall, did M. have access to a one-on-one teaching assistant for the 2022-2023 school year?
>
> A: M. had the teaching assistant for the entirety of the day.

*See* Ex. C at 168:16-20 (T189) (omitted lines highlighted in blue). The ensuing testimony by Mezrahi, like Ms. Granelli's, was not about how "individualized behavior supports would be provided to M.K. in the recommended classroom setting its ABA program" for the 2023-2024 school year. It was about the 2022-2023 program, which was quite different.

*Third*, Kathleen Marino, an outside behaviorist, also testified about her assignment with M.K. ***during the 2022-2023 school year***. Her role that year was to provide just five (5) one-hour consulting sessions in total for the entire year. Her cited testimony had nothing to do with the program offered for the 2023-2024 school year. Again, just *before* the passage quoted by the District, she discussed the scope of her ***2022-2023*** assignment:

> Q: Do you know a student by the name of M.K.?
>
> A: Yes, I do.

---

[2] https://www.merriam-webster.com/dictionary/parse (visited Aug. 4, 2025).

> Q: How do you know him?
>
> A:  In last school year I was assigned to his case at the start of the year for five hours of behavioral consult, and then later in the year more services were added for direct consult -- I mean for direct services.
>
> Q: You had mentioned that you were assigned to M.· For five hours of behavioral consult services. Can you explain what that is?
>
> A: Yep. Behavior intervention consult is an indirect service provided for the teachers on behalf of the student. So, if the student does have any supplementary behavioral write-up or any type of plans, such as a BIP, I would go and work with the teacher, go through the BIP, and provide support for that teacher or the one-to-one implementing those strategies in that plan.
>
> Q: To what extent did you provide the five hours of behavioral consult services during the 2022-2023 school year?
>
> A: In terms of did I -- can you explain extent?
>
> Q: Sure. Did you provide those services you referenced for M. last year?
>
> A: Yes, I did.
>
> Q: To whom did you provide those services?
>
> A: It was his classroom teacher, Ms. Mezrahi, and the one-to-one aide, as well as the other classroom aides in the classroom. He had one aide that was assigned specifically to him, but the aides had rotated and worked in the classroom with M. as well and anyone who was in contact in that classroom with him.

Ex. C at 390:3-391:5 (T435-36).

Assuming these are the District's ten best pages from a 925-page transcript, they do not show that its witnesses testified "in detail regarding how ABA principles and individualized behavior supports would be provided to M.K. in the recommended classroom setting its ABA program" for the 2023-2024 school year.  In fact, it was the District's failure to provide any substance about its 2023-2024 ABA program that likely led the SRO to "patch holes" in the District's case.

The District argues that the SRO's errors are "substantive, not evidentiary." Dist. Br. at 3-4.  Not so. The errors are substantive *and* evidentiary: the SRO made a substantive decision improperly based on new, incorrect facts.

**3. The District will not be unduly prejudiced by Iannarone's affidavit.**

The District contends that it will be prejudiced by Iannarone's affidavit – even if it cross-examines her – because it cannot call a rebuttal witness or introduce documents to refute her opinion.  *Id*. at 5. Not true. Nothing prevents it from cross-examining her with documents it may locate that could refute her opinion. And nothing prevents it from calling a rebuttal witness. Tellingly, the District has not sought leave to do so – likely because Iannarone's testimony is an uncontroversial, factual refutation of the SRO's new, incorrect claims about ABA and BCBAs.

3

Tacitly acknowledging that they would have a fair opportunity to respond to Iannarone, the District shifts rationales: This litigation will prolong and complicate proceedings at significant expense, "diverting time and resources from educational priorities to unnecessary litigation." Dist. Br. at 7. The Court should reject this claim. Congress included in the IDEA the provision that courts "shall hear additional evidence at the request of a party." 20 U.S.C. § 1415(i)(2)(C)(ii). It is not superfluous. *See Homaidan v. Sallie Mae, Inc.*, 3 F.4th 595, 602 (2d Cir. 2021) ("[T]he canon against surplusage… advises courts to interpret a statute to effectuate all its provisions, so that no part will be inoperative or superfluous.") (Quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)) (quotes omitted). The District's rationale would apply to any motion for additional evidence under the IDEA. To be sure, courts have read limits into the provision, as Parents discussed in their opening brief; however, the provision plainly contemplates some additional litigation and some attendant time and expenses.

*Second*, IDEA litigation is not a diversion or interference. Congress made litigation central to the Act's procedural safeguards. It is how parents and school districts vindicate and clarify their respective rights and duties. Moreover, the District has not explained how delay causes it any harm. Parents are the only party affected by delays in this case, and they have asked the Court for relief that may cause a short delay so that the record will be complete.

A useful, analogous framework for this motion is Rule 403 of the Federal Rules of Evidence: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.…" Here, the probative value of Ms. Iannarone's testimony is that it corrects factual errors the SRO interjected into the record on a dispositive issue and completes the record – all so that the Court can conduct an independent review. Allowing the SRO to alter the record without allowing Parents a response denies Parents and their child full protection under the IDEA.

The District has not argued that anything in Ms. Iannarone's affidavit is wrong. It does not argue that her affidavit will mislead the Court or confuse any issues. The only prejudice it has suggested it will suffer is administrative and minor. Iannarone's affidavit is relevant and useful to the Court's determination of whether Congress's goals in enacting the IDEA were met here. It allows the Court to get it right.

Wherefore, for the reasons stated here and in their opening brief, Parents respectfully request that the Court grant their motion.

                Respectfully submitted,

Cc: all parties *via* ECF.                Benjamin J. Hinerfeld
                                                LAW OFFICE OF BENJAMIN J. HINERFELD
                                                9 Stoddard Street

Plymouth, MA 02360
1528 Walnut Street, Suite 1100
Philadelphia, PA 19102
447 Broadway 2nd Floor
New York, NY 10013
Office (508) 591-0385
Cell (215) 694-7432
Fax (215) 689-2423
Ben@hinerfeldlaw.com
*Licensed in MA, PA, NJ, NY, NC & DE (inactive)*

Nicole D. Venditti, Esq.
*Counsel*
**LAW OFFICE OF SUSAN J. DEEDY & ASSOCIATES**
1600 Stewart Avenue, Suite 609
Westbury, New York 11590
(516) 221-8133 (t)
(516) 221-3011 (f)
NVenditti@susandeedylaw.com