FILED
CLERK

9/12/2025

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
Y.E. and M.K. individually, and on behalf of their
child, M.K., a minor,

                              *Plaintiffs*,

                    -against-

HEWLETT WOODMERE UNION FREE
SCHOOL DISTRICT,

                              *Defendant*.
-------------------------------------------------------------X

**MEMORANDUM
AND ORDER**

25-CV-01481 (JMA) (JMW)

**A P P E A R A N C E S :**

    Nicole Diane Venditti
    **Law Office of Susan J. Deedy & Associates**
    1600 Stewart Avenue, Suite 609
    Westbury, NY 11566

         -and-

    Benjamin J Hinerfeld
    **Law Office of Benjamin J. Hinerfeld**
    9 Stoddard Street
    Plymouth, MA 02360
    *Attorneys for Plaintiffs*

    Michael Gerard Vigliotta
    **Volz & Vigliotta, PLLC**
    280 Smithtown Blvd.
    Nesconset, NY 11767
    *Attorneys for Defendant*

**WICKS,** Magistrate Judge:

Plaintiffs Y.E. and M.K., individually and on behalf of their minor child, M.K. ("Plaintiffs") commenced this action against Hewlett Woodmere Union Free School District ("Defendant" or "District") seeking: (i) reversal of the decisions by the impartial due process hearing ("IHO") and State Review Officer ("SRO"), whereby denying M.K. of a Free Appropriate Public Education ("FAPE") and (ii) attorney's fees pursuant to Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq*. (*See generally*, ECF No. 1.) Before the Court now is Plaintiffs' Motion to Supplement the Administrative Record (ECF No. 13), which is opposed by Defendant (ECF No. 16), and Plaintiffs' Reply (ECF No. 17). For the following reasons, Plaintiffs' Motion to Amend the Administrative Record (ECF No. 13), is **GRANTED**.

## BACKGROUND

### I.    Factual Background

The following allegations are drawn from the Complaint. (*See* ECF No. 1.) Plaintiffs bring claims for alleged violations of educational rights committed by the District, on behalf of their disabled minor child, M.K. ("M.K."). (*Id.* at ¶ 1.) Plaintiffs have resided within the area that encompasses the District at all times. (*Id.* at ¶ 2.)

M.K.'s ability to learn is limited due to his "complex medical and psycho-educational profile."[1] (*Id.* at ¶ 10.) M.K., just as any other child, is entitled to a free appropriate public education. (*Id.* at ¶ 16.) However, Defendant "offered M.K. and Parents an awful, unlawful choice: either place M.K. in a classroom in his local public school that could not teach him effectively or send him to a highly segregated school where he would have no contact with

---

[1] A list of M.K.'s diagnoses may be found at paragraphs eleven and twelve. (*Id.* at ¶¶ 11-12.)

neuro-typical children." (*Id.* at ¶ 19.) M.K. started kindergarten at the District during the 2020-2021 school year, and was provided with an Individualized Education Program ("IEP") that included "1:1 paraprofessional support, occupational therapy three times every 6 days . . . small group speech language therapy twice, and physical therapy twice." (*Id.* at ¶ 41.) The District was supposed to provide M.K. with a Behavior Intervention Plan ("BIP"). (*Id.*) The IEPs made little to no progress for M.K. (*Id.* at ¶ 28.) During the 2021-22 school year (first grade), the District "acknowledged that M.K. was making little progress towards his Kindergarten IEP goals." (*Id.* at ¶ 44.) However, the District nonetheless recommended an IEP that was "largely the same as his kindergarten IEP."[2] (*Id.* at ¶ 46.) Further, much like kindergarten, the District again did not implement a BIP for first grade. (*Id.* at ¶ 56.)

The same occurred for the next school year, apart from the additions of "vision services and once-monthly parent training." (*Id.* at ¶ 58.) M.K.'s goals were reduced. (*Id.* at ¶¶ 59-60.) In the spring of 2023, M.K.'s parents unhappy with the results and progress, formally requested that the District send application packets to New York State out-of-district special education schools. (*Id.* at ¶¶ 28, 67-68.) In response to the parent's request, the District updated M.K.'s IEP to include a BIP. (*Id.* at ¶ 69.) However, there is no evidence of the school implementing the BIP. (*Id.*)

Thereafter, M.K.'s parents obtained an independent neuropsychological evaluation from Dr. David J. Marks ("Dr. Marks") that occurred between March 7, 2023, through April 27, 2023. (*Id.* at ¶ 70.) Dr. Marks recommended that M.K. "attend a small, highly structured and individualized program anchored to the principles of applied behavior analysis (ABA)," and that M.K. "be placed with students who would serve as behavior role models at or above his

---

[2] An "IEP" is an Individualized Education Program.

intellectual, linguistic, and behavioral level," and "recommended against placing M.K. with students externalizing behaviors." (*Id.* at ¶¶ 74,75.)

The District proposed an initial IEP for the 2023-24 school year that included new recommendation such as a 8:1:2 classroom setting (eight students, one teacher, and two aides), a 1:1 Board Certified Behavior Analyst for six hours daily, and continuation of all previous services. (*Id.* at ¶ 79.) After M.K.'s parents disagreed with the first IEP proposal, the District agreed to send out applications to out-of-district programs. (*Id.* at ¶ 82.) However, M.K.'s parents were dissatisfied with what was offered to M.K. (*Id.* at ¶ 87.) As a result, M.K.'s parents sent the required ten-day notice that they were rejecting the proposed IEP, intended to place M.K. in the Imagine Academy, and would seek reimbursement for tuition and transportation for the 2023-24 school year. (*Id.* at ¶ 88.)

Following Plaintiffs' ten-day notice and M.K. starting school at the Imagine Academy, Plaintiff filed a Due Process complaint with the IHO. (*Id.* at ¶ 97.) Plaintiffs alleged that "the District violated the IDEA and New York Education laws procedurally and substantively, [and] had failed to offer M.K. a FAPE" for the school years between 2021-2024. (*Id.* at ¶ 98.) Plaintiffs further sought reimbursement for M.K.'s tuition at the Imagine Academy. (*Id.* at ¶ 99.) Following a seven-day trial, the IHO ruled for the District on September 10, 2024, and held that the District met its burden of proof that it complied with IDEA's requirements. (*Id.* at ¶¶ 102, 103.) However, M.K. asserted that the District failed to place M.K. in the proper program or change its recommendations throughout the years, and the IHO's decision was "poorly reasoned, [and] contrary to the law and evidence." (*Id.* at ¶¶ 107-08.)

Thereafter, Plaintiffs appealed to the New York SRO seeking reversal of the IHO decision. (*Id.* at ¶ 151.) The decision was affirmed on December 9, 2024. (*Id.* at ¶ 152.)

## II.    Procedural Background

On March 17, 2025, Plaintiffs filed the instant Complaint against the District. (ECF No. 1.) Defendant filed its Answer on April 14, 2025. (ECF No. 8.) On June 12, 2025, a Status Conference rather than an initial conference was held due to the nature of the case (*see* ECF No. 11), where the undersigned granted Plaintiffs leave to file a Motion for Additional Testimony. (ECF No. 12.) Plaintiffs filed their moving papers, (ECF No. 13) followed by Defendant's opposition (ECF No. 16), and Plaintiffs' reply (ECF No. 17). Oral Argument on the motion was held on September 5, 2025. (ECF No. 18.)[3]

## LEGAL FRAMEWORK

The IDEA states "[a] free appropriate public education is available to all children with disabilities residing in the State between the ages of 3 and 21, inclusive, including children with disabilities who have been suspended or expelled from school." 20 U.S.C.A. § 1412(a)(1)(A); *see also Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 379 (2d Cir. 2003) (quoting 20 U.S.C. § 1412(a)(1)(A) ("The IDEA offers federal funds to states that develop plans to assure "all children with disabilities" a "free appropriate public education")). Likewise, schools are required to provide students with disabilities an IEP each year. *Id.* (citing § 1414(d)). That IEP must provide "services that are 'individually designed to provide educational benefit' to a child with a disability." *Id.*

> An IEP is a written statement that sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives.  Under the IDEA, for a child's IEP to be adequate, it must be likely to produce progress, not regression, and must afford the student with an opportunity greater than mere trivial advancement. However, it need not furnish every special service necessary to maximize each handicapped child's potential.

---

[3] The Court commends counsel on both the submissions and presentations at oral argument.

*A.K v. Westhampton Beach Sch. Dist.*, No. 17-CV-0866 (GRB) (SIL), 2021 WL 621236, at \*8 (E.D.N.Y. Jan. 6, 2021), *report and recommendation adopted sub nom. Killoran v. Westhampton Beach Sch. Dist.*, No. 17-CV-00866, 2021 WL 665277 (E.D.N.Y. Jan. 25, 2021) (internal citations and quotations omitted) (cleaned up).

If a parent believes that their child's IEP is insufficient or deficient, they may challenge the IEP at an IHO. *Id.* (quoting 20 U.S.C. § 1415(f)). If that decision is not satisfactory, they may further appeal to the SRO. *See* 20 U.S.C. § 1415(g); *A.K*, 2021 WL 621236, at \*9 (same). Following review and determination by the SRO, an aggrieved party can further by bringing a civil action "in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy." 20 U.S.C. §1415(i)(2)(A); *see also Killoran on behalf of A.K. v. Westhampton Beach Sch. Dist.*, No. 19-CV-3298(JS)(SIL), 2021 WL 4776720, at \*6 (E.D.N.Y. Oct. 11, 2021), *aff'd sub nom. Killoran v. Westhampton Beach UFSD*, No. 21-2647, 2023 WL 4503151 (2d Cir. July 13, 2023) (explaining that pursuant to IDEA, the final decision by the SRO can be challenged in federal court).

To that end, the IDEA provides the right to bring a civil action and states:

> Any party aggrieved by the findings and decision made under subsection (f) [Impartial due process hearing] or (k) [Placement in alternative educational setting] who does not have the right to an appeal under subsection (g), and any party aggrieved by the findings and decision made under this subsection, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy. … In any action brought under this paragraph, the court-- (i) shall receive the records of the administrative proceedings; (ii) *shall hear additional evidence at the request of a party*; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

20 U.S.C. § 1415(i)(2)(A), (C) (emphasis added).

"The Second Circuit has yet to address the standard for admitting additional evidence in an IDEA proceeding." *L.V. v. Rye City Sch. Dist.*, No. 22-CV-04255 (VR), 2023 WL 5744421, at

*2 (S.D.N.Y. Sept. 6, 2023) (quoting *Eschenasy v. N.Y.C. Dep't of Educ.*, 604 F. Supp. 2d 639, 649 (S.D.N.Y. 2009)). However, courts within this district have generally adopted the approach articulated by the First Circuit in *Town of Burlington v. Department of Education*, 736 F.2d 773 (1st Cir. 1984) [("*Burlington*")], as have other circuits. *Id.*; *see also Bautista v. Banks*, No. 23-CV-11161 (ALC) (RFT), 2025 WL 861223, at *5 (S.D.N.Y. Mar. 19, 2025) ("In the absence of controlling precedent from the Second Circuit, many district courts within this Circuit have adopted the approach established by the First Circuit.")

The *Burlington* Court provides the following guidance. "'[A]dditional' [means] supplemental. Thus construed, this clause does not authorize witnesses at trial to repeat or embellish their prior administrative hearing testimony; this would be entirely inconsistent with the usual meaning of 'additional.'" *Town of Burlington v. Dep't of Educ. for Com. of Mass.*, 736 F.2d 773, 790 (1st Cir. 1984), *aff'd sub nom. Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 105 S. Ct. 1996, 85 L. Ed. 2d 385 (1985).

> [Moreover], determination of what is 'additional' evidence must be left to the discretion of the trial court which must be careful not to allow such evidence to change the character of the hearing from one of review to a trial *de novo*. A practicable approach, we believe, is that an administrative hearing witness is rebuttably presumed to be foreclosed from testifying at trial. A motion may then be made to allow such a witness to testify within specified limits stating the justification for the testimony. In ruling on motions for witnesses to testify, a court should weigh heavily the important concerns of not allowing a party to undercut the statutory role of administrative expertise, the unfairness involved in one party's reserving its best evidence for trial, the reason the witness did not testify at the administrative hearing, and the conservation of judicial resources.

*Id.* at 791.

The *Burlington* Court provided useful examples of when supplementation could be warranted. "The reasons for supplementation will vary; they might include gaps in the administrative transcript owing to mechanical failure, unavailability of a witness, an improper

exclusion of evidence by the administrative agency, *and evidence concerning relevant events occurring subsequent to the administrative hearing*." *Id.* (emphasis added).

Crucial to this action, a district court reviewing an SRO decision "shall hear additional evidence at the request of a party." 20 U.S.C. § 1415(i)(2)(C)(ii). "Thus, judicial review in IDEA cases differ substantially from judicial review of other agency actions, in which courts generally are confined to the administrative record and are held to a highly deferential standard of review." *M.S. v. N.Y.C. Dep't of Educ.*, No. 13-cv-3719 (RRM)(VMS), 2013 WL 6028817, at *3 (E.D.N.Y. Nov. 13, 2013) (quoting *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1471 (9th Cir. 1993)); *see also Sebastian M. v. King Philip Reg'l Sch. Dist.*, 685 F.3d 79, 85 (1st Cir. 2012) (same).

"Although the statute is worded broadly and provides that courts 'shall hear additional evidence at the request of a party,' 20 U.S.C. § 1415(i)(2)(C)(ii), courts have been unwilling to admit additional evidence when fairness and other equitable considerations cut against doing so." *Bautista*, 2025 WL 861223, at *5 (citing *M.B. v. N.Y. City Dep't of Educ.*, No. 14-CV-3455, 2015 WL 6472824, at *2 (S.D.N.Y. Oct. 27, 2015) ("A lenient standard for additional evidence would have the consequence of making the whole IDEA process more time consuming, as parties scrambled to use the federal court proceeding to patch up holes in their administrative case.")). What appears to be a mandatory step for Courts, has been altered to a discretionary matter. *See M.S.*, 2013 WL 6028817, at *7 ("The standard for admitting additional evidence in IDEA cases may be unsettled in this Circuit, but it is undisputed that the decision lies squarely within the court's discretion."); *Lillbask ex rel. Mauclaire v. Sergi*, 193 F. Supp. 2d 503, 506 (D. Conn. 2002) (citing *Burlington*, 736 F.2d 791) ("The taking of additional evidence is a matter [] left to

the discretion of the trial court.") Yet, Courts in this Circuit overwhelmingly echo the words of the Statute.[4]

Courts in this district have noted that "courts generally accept evidence that was not withheld in bad faith, is relevant, and does not change the administrative review into a trial de novo." *G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*, 751 F. Supp. 2d 552, 554 n.1 (S.D.N.Y. 2010*), aff'd sub nom. G.B. v. Tuxedo Union Free Sch. Dist.*, 486 F. App'x 954 (2d Cir. 2012).

In addition, the Fourth Circuit has cautioned against using too lenient of a standard which would "mak[e] the whole IDEA process more time consuming, as parties scramble[] to use federal court proceeding to patch up holes in their administrative case." *Lillbask*, 193 F.Supp.2d at 507 (quoting *Springer v. Fairfax Cnty. Sch. Bd.*, 134 F.3d 659, 667 (4th Cir. 1998)). In contrast, the Third Circuit's approach analyzes whether the evidence is "relevant, non-cumulative

---

[4] *See e.g., Rivas v. Carranza*, No. 21-CV-647 (WFK)(VMS), 2025 WL 2150287, at *3 (E.D.N.Y. June 26, 2025) ("Courts evaluating claims under the IDEA are empowered to 'receive the records of the administrative proceedings,' [and] 'hear additional evidence'"); *Apple v. New York City Dep't of Educ.*, No. 24-CV-4380 (OEM) (RML), 2025 WL 1663624, at *1 (E.D.N.Y. June 12, 2025) ("A district court may 'receive the records of the administrative proceedings' and, if requested by the parties, hear additional evidence"); *C.S. v. New York City Dep't of Educ.*, No. 24-CV-02111 (ER), 2025 WL 964008, at *10 (S.D.N.Y. Mar. 31, 2025) ("When such an action is brought in federal district court, the court reviews the records of all of the prior administrative hearings and must hear additional evidence if so requested by either of the parties"); *T.C. on behalf of I.M. v. William Floyd Union Free Sch. Dist.*, 774 F. Supp. 3d 583, 594 (E.D.N.Y. 2025) ("When such an action is brought in federal district court, the court reviews the records of all of the prior administrative hearings and must hear additional evidence if so requested by either of the parties"); *Phillips v. Aviles-Ramos*, No. 23-CV-2140 (JPC)(JW), 2025 WL 934342, at *5 (S.D.N.Y. Mar. 27, 2025), *reconsideration denied*, No. 23-CV-2140 (JPC), 2025 WL 1547490 (S.D.N.Y. May 29, 2025) ("Instead, when reviewing IDEA administrative decisions, a federal district court considers the record and any additional evidence the parties submit and bases its determination on a preponderance of the evidence"); *Tobuck v. Banks*, No. 23-CV-1356 (LGS), 2024 WL 1349693, at *3 n.2 (S.D.N.Y. Mar. 29, 2024) ("To the extent the IEE's recommendation is relevant, it can properly be considered as 'additional evidence' that a reviewing court 'shall hear ... at the request of a party' under the IDEA"); *Khanimova v. Banks*, No. 23-CV-09531 (MMG), 2025 WL 722876, at *3 (S.D.N.Y. Mar. 6, 2025) ("When reviewing administrative decisions under the IDEA, a federal district court considers the record and any additional evidence the parties submit and bases its determination on a preponderance of the evidence"); *Maysonet v. New York City Dep't of Educ.*, No. 22-CV-1685 (LGS), 2023 WL 2537851, at *5 (S.D.N.Y. Mar. 16, 2023) ("The IDEA allows courts to consider additional evidence on appeal from an administrative proceeding").

and useful in determining whether Congress' goal has been reached for the child involved." *Susan N. v. Wilson Sch. Dist.*, 70 F.3d 751, 760 (3d Cir. 1995).

In consideration Plaintiff's application here, the Court applies the *Burlington* standard – which the parties both rely upon. *See A.S. v. Trumbull Bd. of Educ.*, 359 F. Supp. 2d 102, 103 (D. Conn. 2005) ("Because both parties invoke *Burlington,* the Court (without deciding the issue) accepts the First Circuit's decision as setting forth the proper interpretation of § 1415(e)(2)."); *see also R.H. v. Bd. of Educ. of Saugerties Cent. Sch. Dist.*, No. 16-CV-551, 2017 WL 401237, at *2 (N.D.N.Y. Jan. 30, 2017) ("Further, '[s]everal Circuits have adopted the *Burlington* standard or cited it with approval' and 'the Circuits generally agree that 'the question of what additional evidence to admit in an IDEA judicial review proceeding, as well as the question of the weight due to the administrative findings of fact, should be left to the discretion of the trial court''"); *M.S.*, 2013 WL 6028817, at *5 ("In determining what additional evidence should be admitted, courts in this Circuit have considered both the First Circuit's guidance that 'the administrative record should be the main source of evidence with limited additions,' and the Third Circuit's guidance that 'the district court should consider additional evidence that is relevant, non-cumulative, and useful'").

## DISCUSSION

Plaintiffs seek to supplement the record by introducing the limited affidavit testimony of Nicole Iannarone ("Iannarone"), a Board-Certified Behavior Analyst (BCBA), which is claimed to be "relevant, non-cumulative and useful." (ECF No. 13 at 1.) As alleged, the SRO went outside of the record to make his conclusion. (*Id.* at 6.) Iannarone's testimony includes that the SRO's opinion is wrong for the following four reasons. (*Id.*)

*First*, the District itself never argued that – in the SRO's words – a program anchored in ABA is an "individual service designed to deliver individual behavioral

support to the student throughout the school day." This was the SRO's own argument. And his description of an ABA program as an "individual service" – akin to occupational or speech therapy – reveals his fundamental misunderstanding of ABA programing. Ms. Iannarone's testimony rebuts this incorrect*, sua sponte* factual claim. As she explains, an ABA program cannot be an "individual" service; it is always a team endeavor. She also clarifies the crucial difference – ignored by the SRO – between a complete ABA program, which a child on the autism spectrum like M.K. required, and a behavioral support program, which is just a part of an overall educational program.

*Second*, the District never argued that Dr. Marks failed to object to the recommendation for individual BCBA services. The SRO made this argument on his own. But Marks did not expressly object to the proposal for individual BCBA services for good reason: he was never asked to opine on it. Consistent with Iannarone's testimony, Marks repeatedly described an ABA program implemented by multiple persons, not an individual service.

*Third*, the District never argued that all BCBAs have "background, expertise, credentials in working with youth on the autism spectrum." The SRO made this claim on his own, and he was wrong. There is no evidence supporting his assumption that all BCBAs have such background, experience, and credentials to support M.K.'s unique needs. …

*Fourth*, the SRO was wrong to say – again, making an argument not advanced by the District – that providing M.K a daily 1:1 BCBA would, in itself, constitute a valid ABA program. Iannarone explains why this is wrong: (1) An ABA program is a team endeavor, not an individual service, so more personnel than a single BCBA would be needed to implement an ABA program; and (2) BCBAs simply do not take jobs as 1:1 aides. Rather, BCBAs working in a school setting are responsible for training staff, analyzing data, and modeling and monitoring implementation of the program, not day to day instruction.

(*Id.* at 6-7.)

Therefore, Plaintiffs argue that for these reasons, they would have not anticipated such arguments were going to be made by the SRO and providing Iannarone's testimony would correct the inaccurate claims. (*Id.* at 7.)  In short, they argue that the decision rendered went far afield of the decision appealed, and as such Plaintiffs were deprived of the opportunity to put in evidence on that issue.

Defendant opposes arguing that not only is the additional testimony not useful, but the Plaintiffs also had ample time and opportunity to provide this testimony earlier.  Further, if this additional testimony were allowed now then Defendant would be prejudiced as it would not be able to call rebuttal witnesses or evidence to rebut this testimony. (ECF No. 16 at 4-5.) As Plaintiffs note, Defendant has not asked for leave to add a rebuttal witness or cross Iannarone. (ECF No. 17 at 3.) Indeed, Plaintiffs addressed this in their moving papers, by stating "[a]dmitting Ms. Iannarone's affidavit, subject to her availability for cross-examination, strikes this balance." (ECF No. 13 at 2.) In other words, Defendant will not be prejudiced as alleged because the District has the opportunity to either call a rebuttal witness or request to cross examine Ms. Iannarone.

In a similar case with the same School District, the Court allowed admission of additional discovery to supplement the administrative record with evidence of the child's educational progress, and documents relating to events occurring after the IHO hearing. *Jordan S. v. Hewlett Woodmere Union Free Sch. Dist.*, No. 08-CV-1446 (LDW) (AKT), 2009 WL 910804, at *3-4 (E.D.N.Y. Mar. 31, 2009). There, since the evidence was "originated subsequent to the [administrative hearing] before the IHO," the record was supplemented. *Id.* at *2. The Court also noted no restriction prevents discovery beyond the record. *Id.* at *4.

Here, the IHO's decision is dated September 10, 2024. (ECF No. 1-2 at 28.) The SRO rendered its decision on December 9, 2024. (ECF No. 1-3 at 22.) Iannarone's affidavit is dated July 1, 2025 (ECF No. 13-1 at 12), and, similar to *Jordan S.*, this supplemental testimony "originated subsequent" to the hearings that Plaintiffs now appeal.

The moving party's request for supplementation must be sufficiently particularized and specific so that the Court can assess the need for additional documentation. *See A.S.*, 359

F.Supp.2d at 104 (denying Plaintiff's request for supplementation because Plaintiff failed to "provide[] the Court with the documents they seek to introduce nor sufficiently describe[] them in a way that would permit the Court to consider Plaintiffs' motion.") Here, Plaintiffs specifically state the need to include this additional testimony as they allege that the hearings were improperly decided because the SRO made conclusions based on matters not within the record or "own his own". (ECF Nos. 13 at 6; 17 at 3.)

The Court must "assur[e] that the administrative process is accorded its due weight and that judicial review does not become a trial *de novo*, thereby rendering the administrative hearing nugatory, a party seeking to introduce additional evidence at the district court level must provide some solid justification for doing so." *L.V.*, 2023 WL 5744421, at *2 (quoting *Roland M. v. Concord Sch. Comm.*, 910 F.2d 983, 996 (1st Cir. 1990)). As Plaintiffs only seek to add one additional document—Iannarone's affidavit—the administrative process will undoubtedly be given the proper weight. *See G.B. ex rel. N.B.*, 751 F. Supp. 2d at 555 (granting additions to the record of nine documents due to the absence of bad faith); *see also C.M. v. New York City Dep't of Educ.*, No. 22-CV-9307 (LTS) (SN), 2025 WL 2452344, at *1 n.2 (S.D.N.Y. Aug. 26, 2025) (noting that the Court would entertain additional evidence but could not "ascertain" which evidence fell outside the record).

With that, courts will conduct a "'independent judicial review[,]' [which] entails (1) reviewing the record of the administrative proceedings; (2) hearing additional evidence at the request of a party; and (3) granting such relief as the Court deems appropriate based on the preponderance of the evidence." *N.J. v. NYC Dep't of Educ.*, No. 18-CV-6173 (JMF), 2021 WL 965323, at *6 (S.D.N.Y. Mar. 15, 2021) (internal citations omitted). The limited testimony in the form of an affidavit is not cumulative or redundant of the existing record. *See M.L. v. New York*

*City Dep't of Educ.*, 943 F. Supp. 2d 443, 446 (S.D.N.Y. 2013) (allowing limited testimony as it was not duplicative of the record). Therefore, allowing Plaintiffs to introduce this evidence will not undermine the administrative record nor will it prejudice Defendant. *See M.L.*, 943 F. Supp. 2d at 445 (S.D.N.Y. 2013) (citing *G.B. ex rel. N.B.,* 751 F.Supp.2d at 555 n.1) ("Under the 'additional evidence' provision of the IDEA, '[t]he taking of additional evidence is a matter ... left to the discretion of the trial court.'"); *see also A.W. v. Bd. of Educ. of the Wallkill Cent. Sch. Dist.*, No. 14-CV-1583 (DNH)(RFT), 2015 WL 1579186, at *2 (N.D.N.Y. Apr. 9, 2015) (quoting *M.S.*, 2013 WL 6028817, at *3, 5) ("Accepting the First Circuit's guidance, this Court fully understands that the administrative record is the principal source of evidence, and that additional evidence means supplemental evidence, 'so that witnesses could not 'repeat or embellish their prior administrative testimony.'"); *B.Z. v. Hewlett Woodmere Union Free Sch. Dist.*, No. 23-CV-01759 (OEM) (SIL), 2025 WL 339140, at *4 (E.D.N.Y. Jan. 27, 2025) (internal citations omitted) ("At the same time, a reviewing court 'must give [] due weight' to the administrative proceedings 'mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy.'") Moreover, if Defendant wishes to set forth a rebuttal witness or cross-examine Ms. Iannarone, it may do so, as Plaintiffs have proffered (*see* ECF No. 13 at 2).

The Court is mindful that "a district court reviewing a claim pursuant to section 1415(i)(2) errs as a matter of law when it fails to (1) 'engage in an independent review of the administrative record,' and (2) 'make a determination [of the balance of the equities] based on a preponderance of the evidence[.]'" *Ferreira v. Aviles-Ramos*, 120 F.4th 323, 333 (2d Cir. 2024) (internal citations omitted). In that case, no additional testimony or evidence was requested to be admitted, and the key issue was what the district court should be engaged in while reviewing an

IDEA administrative matter. Yet, the Second Circuit wrote when "deciding appropriate relief, the court must (1) 'receive the records of the administrative proceedings,' (2) 'hear additional evidence at the request of a party,' and (3) 'bas[e] its decision on the preponderance of the evidence.' Section 1415's use of the preponderance of the evidence standard, *as well as its authorization of district courts to supplement the record*, 'plainly suggest less deference' than is called for in other contexts, such as under the Administrative Procedure Act. *Id.* at 331-32 (emphasis added) (internal citations omitted). In short, the language of § 1415 clearly contemplates liberal consideration of additional evidence.

The plain language of 20 U.S.C. § 1415(i)(2)(C)(ii) warrants inclusion of the affidavit of Ms. Iannarone to the administrative review file. Ms. Iannarone's observations rebut the very conclusions made by the SRO that had not been raised or made earlier in the record. (*See* ECF Nos. 13 at 6-7; 13-1 at 10-12.) Furthermore, Ms. Iannarone's affidavit additionally provides background on M.K. (ECF No. 13-1 at 8), what the ABA entails (*Id.* at 4), and what an IEP should include (*Id.* at 5).[5] This information may be useful for the Court to determine by a preponderance of the evidence if the SRO's findings and decision should result in reversal. *See* 20 U.S.C. § 1415(i)(2). Moreover, this information is non-cumulative or redundant as the parties' exhibits do not include any expert analysis on what the ABA is and what should be seen in an IEP. In other words, Ms. Iannarone's affidavit does not "repeat or embellish [] prior administrative hearing testimony." *Burlington*, 736 F.2d at 790. To the contrary, the exhibits

---

[5] "A court might be persuaded to allow additional evidence to supplement the record when: 1. the evidence fills gaps from the administrative record; 2. includes testimony from a previously unavailable witness; 3. the evidence was improperly excluded at the administrative level; or 4. the evidence concerns relevant events that have taken place after the administrative proceedings." 13 No. 10 Quinlan, Special Education Law Bulletin art. 6; *see also Burlington*, 736 F.2d at 791 ("The reasons for supplementation will vary; they might include gaps in the administrative transcript owing to mechanical failure, unavailability of a witness, an improper exclusion of evidence by the administrative agency, and evidence concerning relevant events occurring subsequent to the administrative hearing").

included legal documents, correspondence between Plaintiffs and the District, IEPs and BIPs. *See* Administrative Record at 190-502. Finally, when determining fairness to the parties, supplementing the record with the affidavit would be fair to Plaintiffs and providing Defendant with an opportunity to cross-examine or rebut is likewise equitable.

Accordingly, the affidavit is included in the record before the Court.

## **CONCLUSION**

For the reasons stated herein, Plaintiffs' Motion to Amend the Administrative Record (ECF No. 13) is **GRANTED**. Defendant shall file a letter on ECF on or before **September 19, 2025**, advising whether Defendant intends to produce a rebuttal witness or cross-examine Ms. Iannarone.

Dated:  Central Islip, New York.
        September 12, 2025

S O   O R D E R E D:

/S/ *James M. Wicks*
        JAMES M. WICKS
    United States Magistrate Judge