**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

———————————————————————X

**Y.E. and M.K.** individually, and on behalf of their child,
M.K., a minor,

Plaintiffs,

-against-

**Hewlett Woodmere Union Free School District**

Defendant.

———————————————————————X

**Case No. 2:25-cv-01481-JMA-JMW**


Individuals with Disabilities
Education Act;
N.Y. Educ. Law § 4401 *et seq*.


# MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION
# FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

Nicole D. Venditti, Esq.
**Law Office of Susan J. Deedy & Associates**
1600 Stewart Avenue, Suite 609
Westbury, New York 11590
(516) 221-8133
NVenditti@Susandeedylaw.com

Benjamin J. Hinerfeld
**Law Office of Benjamin J. Hinerfeld**
9 Stoddard Street
Plymouth, MA 02360

1528 Walnut Street, Suite 1100
Philadelphia, PA 19102

447 Broadway 2nd Floor
  New York, NY 10013

(508) 591-0385
Ben@hinerfeldlaw.com

TABLE OF CONTENTS

**Table of Contents** ........................................................................................................................ ii

**Table of Authorities** ................................................................................................................... iii

**I.   INTRODUCTION** ..................................................................................................................1

**II.  STANDARD OF REVIEW** ...................................................................................................1

**IV. ARGUMENT** ...........................................................................................................................2

**Response to Point I** ....................................................................................................................2

I (A) Parents did not waive any arguments concerning procedural or substantive
violations. Defendant does not specify what arguments they waived......................2

I (B) The District did not offer M.K. a FAPE for either 2021-22 or 2022-23.
Neither IEP offered a program calculated for M.K. to make progress
appropriate in light of his circumstances..................................................................3

I (C) The District did not offer M.K. a FAPE for the 2023-2024 school year ...................6

I (D) BCBA Iannarone's affidavit and testimony confirm that the
District did not offer M.K. a FAPE for the 2023-2024 school year.........................11

**Response to Point II - Ms. Iannarone properly opined about established facts in the
record. She explained, based on her expertise and experience, why the June 14, 2023
IEP did not offer a program that met the "clear consensus" about M.K.'s needs.**............16

**Response to Point III - Imagine Academy is an ideal placement for M.K.
The Court should find that it was appropriate under the Second Prong
of the Burlington/Carter test.**..........................................................................................18

a.   The Court should decide this issue rather than remanding to the SRO or IHO.
Parents have exhausted their administrative remedies and should not have
to incur additional delay and expense of "re-exhaustion." ............................................18

b.   Imagine Academy was an appropriate placement for M.K. The Second Circuit
has long limited the importance of a private school's restrictiveness as a factor
under the Second Prong of Burlington/Carter ...............................................................19

**Response to Point III  - Discussion of equitable considerations:
The equities support a full award of tuition reimbursement.**...........................................20

**V. CONCLUSION** ........................................................................................................................20

# TABLE OF AUTHORITIES

## CASES

*Bd. of Educ. of the Harrison Cent. Sch. Dist. v. C.S,*
2024 U.S. Dist. LEXIS 1703200 (S.D.N.Y. Sept. 20, 2024) ................................................2

*Bd. of Ed. of Hendrick Hudson Cent. Sch. Dist. v Rowley*,
458 U.S. 176 (1982) ................................................................................................................1

*C.L. v. Scarsdale Union Free Sch. Dist.*,
744 F.3d 826 (2d Cir. 2014) ...............................................................................................19

*Florence Cnty. Sch. Dist. Four v. Carter ex rel. Carter*,
510 U.S. 7 (1993) .................................................................................................................19

*Frank G. v. Bd. of Educ.*,
459 F.3d 356 (2d Cir. 2006) ...............................................................................................19

*Gagliardo v. Arlington Cent. Sch. Dist.*,
489 F.3d 105 (2d Cir. 2007) .................................................................................................1

*M.H. v. N.Y.C. Dep't of Educ.*,
685 F.3d 217 (2d Cir. 2012) .................................................................................................1

*M.O. v. N.Y.C. Dep't of Educ.*,
793 F.3d 236 (2d Cir. 2015) ...............................................................................................11

*R.E. v. N.Y.C. Dep't of Educ.*,
694 F.3d 167 (2d Cir. 2012) ........................................................................................ *passim*

*Reynart v. Griffin*,
2017 U.S. Dist. LEXIS 221955 (E.D.N.Y. Oct. 9, 2017) .....................................................4

*Sch. Committee of Burlington v. Dep't of Educ.*,
471 U.S. 359 (1985) ..................................................................................................... *passim*

*Walczak v. Fla. Union Free Sch. Dist.*,
142 F.3d 119 (2d Cir. 1998) .................................................................................................1

*Y.E. v. Hewlett Woodmere Union Free Sch. Dist.*,
2025 WL 2637680 (E.D.N.Y. Sept. 12, 2025) .............................................................1, 16

## STATUTES AND RULES

20 U.S.C. § 1400, *et seq*. (Individuals with Disabilities Education Act) ........................... *passim*

20 U.S.C. § 1401 ......................................................................................................................19

20 U.S.C. § 1412(C)..................................................................................................................3

34 C.F.R. § 300.148 ................................................................................................................3

**Other Sources**

2 Federal Evidence Practice Guide § 12.04 ............................................................................4

## I. INTRODUCTION

M.K. needed an intensive program of Applied Behavior Analysis (ABA) to make meaningful educational progress. For years, he languished in inappropriate District programs that did not offer ABA. In June 2023 and then September 2023, the District finally presented IEPs purportedly to meet M.K.'s needs, but neither was a true ABA program. M.K.'s parents placed him at Imagine Academy, a private school for children like M.K. He has thrived. The District now argues that it *did* offer ABA, but it points to no compelling evidence. Parents respectfully ask this Court to consider the full record and find that the District denied M.K. a free appropriate public education and that they are entitled to tuition reimbursement and other appropriate relief.

## II. STANDARD OF REVIEW[1]

The IDEA has a unique standard of review for federal courts – a hybrid of independent analysis, *de novo* review of the law, and traditional deference afforded to administrative hearing officers. In *Gagliardo v. Arlington Central School District*, the Second Circuit noted that the judiciary generally "lack[s] the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy."[2] But it reiterated that courts must examine the record for 'objective evidence' that indicates 'whether the child is likely to make progress or regress under the proposed plan.'"[3] Subsequently, in *M.H. v. New York City Department of Education*,[4] the court explained how courts should assess state hearing officer decisions:

> [T]he district court's analysis will hinge on the kinds of considerations that normally determine whether any particular judgment is persuasive, for example whether the decision being reviewed is well-reasoned, and whether it was based on

---

[1] Parents respectfully refer the Court to pages 2-4 of their opening brief (PLMOL) for the IDEA's basic standard of review.

[2] *Gagliardo*, 489 F.3d 105, 113 (2d Cir. 2007) (emphasis added) (quoting *Bd. of Educ. v. Rowley*, 458 U.S. 176, 206, 208 (1982)).

[3] *Id.* at 113 (quoting *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 130 (2d Cir. 1998)).

[4] *M.H.*, 685 F.3d 217, 244 (2d Cir. 2012).

substantially greater familiarity with the evidence and the witnesses than the reviewing court.[5]

The consensus of courts that have applied the IDEA's unique standard of review is that the SRO is entitled to deference, but it has to be earned.   Defendant highlights the deference courts owe to the State Review Officer (SRO), and Parents agree that the deference to the SRO depends on the quality of its decision – courts must ensure that the hearing officer's decision is "thorough and careful."[6]  Even where, as here, the IHO and SRO agree about a factual finding, that finding must be "reasoned and supported by the record."[7]

As Parents explained in their opening brief, both the IHO and SRO drew important factual conclusions that have no support in the record.

### III. ARGUMENT

Because the parties' opening briefs in support of their cross motions cover very similar ground, this brief largely addresses those of Defendant's arguments that Parents' opening brief did not anticipate or did not anticipate in full.

### Response to Point I.

**I. (A). Parents did not waive any arguments concerning procedural or substantive violations. Defendant does not specify what arguments they waived.**

Defendant contends that Parents abandoned unspecified arguments concerning procedural violations.[8] Presumably it will explain what arguments were abandoned in its response to Parents' opening brief.  Parents reserve the right to address any abandonment arguments in their reply if and when Defendant specifies them.

---

[5] *Id.*
[6] Defendant's Mem. of Law in Support of its Mot. for Summary Judg. (Def. Br.) at 7-8 (collecting cases).
[7] *Bd. of Educ. of the Harrison Cent. Sch. Dist. v. C.S.*, No. 23-CV-8182 (KMK), 2024 U.S. Dist. LEXIS 170320,  *30 (S.D.N.Y. Sept. 20, 2024).
[8] Def. Br. at 8-9.

Defendant next defends its conduct in late August 2023 as being in compliance with the IDEA's procedural requirements.[9] Parents do not contend that the District's June 14, 2023 IEP placing M.K. at Ogden Elementary was untimely. As explained in their opening brief, it was substantively inadequate, failing to offer a program reasonably calculated for him to make appropriate progress.[10] At the hearing, Defendant introduced impermissible, retrospective evidence to bolster that IEP, but failed to do so.[11]

Regarding the IEP proposing that M.K. attend the BOCES Willet Avenue school, as Parents explained in their opening, they sent a ten-day-letter (TDN) on September 22, 2023, but the District did not offer the IEP until September 6, 2026, eleven days later, the day that M.K. started at Imagine Academy.[12]  Defendant does not mention the TDN. It was reversible error for the IHO and SRO to let the District defend (and, thus, make Parents challenge) two different IEPs – and to do so with impermissible retrospective evidence.[13]

**I. (B) – The District did not offer M.K. a FAPE for either 2021-22 or 2022-23. Neither IEP offered a program calculated for M.K. to make progress appropriate in light of his circumstances.**

Parents explained in their opening brief why neither the 2021-22 nor the 2022-23 IEP offered M.K. a FAPE, and that he made no more than *de minimis* progress under either IEP.[14] As they explained, in the spring of 2021, the District knew that M.K. was not making appropriate progress under his prior IEP but did not make any material changes to it.[15]

---

[9] *Id*. at 9-10.

[10] PLMOL at 18-19.

[11] *Id*. at 21-23.

[12] *Id*. at 19-20. Defendant notes that the District was closed for September 2 and September 4, but the IDEA expressly includes legal holidays in the ten business day timeline. 20 U.S.C. §1412(C)(I)(III)(1)(bb); 34 C.F.R. § 300.148(d)(1)(ii) ("At least ten (10) business days (including any holidays that occur on a business day) prior to the removal of the child from the public school…").

[13] PLMOL at 26-28.

[14] *Id*. at 4-12.

[15] *Id*. at 4-6 ("[A] key part of the definition of FAPE for M.K. for first grade was that it be *different and better than what he got in kindergarten*." (Emphasis in original).

Defendant cites testimony from first grade teacher Alexandra English to suggest that M.K. made progress *during* the 2021-22 school year, and, thus, to argue that the July 2021 IEP written for that year offered him a FAPE.[16] But as Parents explained in their opening, it was reversible error for the IHO and SRO to cite English's retrospective testimony about M.K.'s performance under the IEP to argue that it offered him a FAPE.[17] The District now offers the same improper analysis.

The District also repeats the IHO's groundless ruling that Parents' decision not to cross-examine Ms. English meant that they were not challenging the 2021-2022 IEP.[18] Here, Parents had a simple, good reason not to cross examine English: she said nothing that hurt their case. "Most lawyers agree that you should not cross-examine in the following instances: (1) If the witness has not hurt your case; (2) If the witness is obviously not credible (or where his testimony is so confused or unclear that the judge or jury will dismiss it)."[19] Moreover, the fact that English was deemed credible does not make her testimony useful or persuasive.

The District touts M.K. having made "year-after-year gains,"[20]but does say what those gains were or whether they were significant. As Parents explained in their opening brief, the evidence shows at best *de minimis* gains in first grade.[21] Ms. English herself characterized his progress as "small, small gains."[22] M.K. achieved only 4 of 20 goals, only one of which was

---

[16] Def. Br. at 11.
[17] PLMOL at 7-9.
[18] Def. Br. at 11.
[19] 2 Federal Evidence Practice Guide § 12.04. This issue often arises in post-conviction relief actions where a prisoner alleges that an attorney was ineffective for failing to cross examine a prosecution witness. Courts reject such claims where counsel has made a reasonable tactical decision not to cross examine the witness – for instance, where cross is deemed unnecessary. *See, e.g., Reynart v. Griffin*, No. 11-CV-0748 (PKC), 2017 U.S. Dist. LEXIS 221955, at *29 (E.D.N.Y. Oct. 9, 2017) ("It was entirely reasonable for counsel to choose not to cross-examine… about the evidence found at the scene, as counsel had already succeeded in suppressing the evidence he believed would be most prejudicial to Petitioner, and cross-examination of this particular witness was not necessary to the chosen defense….").
[20] Def. Br. at 11-12.
[21] PLMOL at 9-12.
[22] *Id*. at 10.

arguably academic.[23] His lack of progress is reflected in the District simplifying his academic goals for second grade.[24] In sum, the District's claim of-year-after-year gains from kindergarten to first grade has no basis in the record.

Wirth respect to the 2022-2023 school year, the District notes that it added a 1:1 teaching assistant for M.K.[25] It also contends that M.K. continued to make meaningful progress in the 2022-2023 school year."[26] Again, it gives no detailed support for this claim. Instead, it directs the reader to DE90,[27] a page from a March 8, 2022 CSE with a "Physical Summary Therapy." But that summary does not show progress, meaningful or otherwise, except possibly in the following observation: "On the playground he has learned to position himself correctly at the top of the slide."[28] The balance describes M.K.'s physical limitations and details the significant support he needs to accomplish any physical task.[29] And as explained in Parents' opening brief, the 1:1 teaching assistant supposedly assigned specifically to him became a rotation of whichever adult was available at a given time.[30] The result was that his problem behaviors increased, even after the addition of the teaching assistant.[31]

The District also discusses behavior interventions in 2022-2023, including a behavior plan, but overstates their formality and effectiveness.[32] At trial, the District introduced no written

---

[23] *Id*. at 11.
[24] *Id.* at 13-14.
[25] Def. Br. at 12.
[26] *Id.*
[27] T533:20. Citations to the SRO's official record are as follows: **T**- trial transcripts; **PE** - Parent exhibits; **DE** - District exhibits; **SD** - SRO decision; **I** – IHO decisions; **P** - Parties' SRO pleadings; **S** - supplemental documents; **IE** – IHO exhibits; **CO** – Correspondence; **SPE** – Supplemental Parents' Exhibits.  **NOTE:** For hearing transcripts, this brief cites to the SRO's red **T**- citations rather than to the transcripts' black internal page numbers.
[28] DE90.
[29] *Id.*
[30] PLMOL at 14.
[31] *Id.*
[32] Def. Br. at 13.

5

behavior plan before April 2023, and that plan was not consistent with the observations from an earlier functional behavior analysis.[33]

The District argues that denial of FAPE claims for the 2021-22 and 2022-23 school years do not support a "free-floating sanction" of tuition reimbursement.[34] Parents have not made that argument. Parents also question the District's factually incorrect argument that they abandoned their demand for compensatory education.[35] The Complaint asks the Court to find that the District denied M.K. a FAPE, and award tuition reimbursement and "any other relief this Court deems appropriate."[36] Before the SRO, Parents requested that it "grant the relief requested in Petitioners' July 2, 2024 closing brief,"[37] which, in turn, sought "an Order granting compensatory education services in the form of ABA therapy" as well as "any further relief which the Hearing Officer deems just and proper."[38]  Thus, if the Court agrees that the District denied M.K. a FAPE for the 2021-22 and/or 2022-23 school years, it should award them appropriate compensatory relief."[39]

### I. (C) – The District did not offer M.K. a FAPE for the 2023-2024 school year.

The District did not offer M.K. a FAPE for the 2023-2024 school year.  As Parents explained in their opening brief, and as the District itself asserts, the parties reached a consensus that M.K.'s program should adopt the recommendations of Dr. David Marks, whom Parents hired to do an independent evaluation.[40] Marks recommended a small, highly structured and individualized program, anchored in the principles of Applied Behavior Analysis (ABA).[41]  The

---

[33] PLMOL at 14.
[34] Def. Br. at 13.
[35] *Id*. at 13 and n.3.
[36] ECF 1 at 33.
[37] P45.
[38] IE47.
[39] Def. Br. at 14.
[40] *Id.*; PLMOL at 16.
[41] PLMOL at 16 (citing Marks Report, PE28). Parents' opening gives a short explanation of the science of ABA, based on the affidavit and testimony of Ms. Iannarone. PLMOL at 16-18.

parties disagree about whether the District's June 14, IEP offered a program consistent with Dr. Marks' recommendations.

As Parents explain in their opening brief, the June 14, 2023 IEP recommended an 8:1:2 in-District program that closely resembled programs in previous IEPs, but added a 1:1 Board Certified Behavior Analyst (BCBA) for six hours daily.[42] The IEP's only mention of ABA is a verbatim paste of Dr. Marks' recommendation, but not in a section relating to its provision of services.[43] Parents' expert, BCBA Nicole Iannarone, opined that the IEP failed to include numerous crucial details about how an ABA program would be provided.[44]

The District misquotes CSE Chairperson Kathleen Granelli to claim that M.K. would have received "discrete trial instruction" – one of several modes for providing ABA.[45] This proffer is problematic for two reasons. *First*, as Parents explain in their opening, Granelli did not say that M.K. would receive "discrete trial instruction;" she said: "It's highly individualized, there's opportunities for discrete trials."[46]   On cross examination, she could not explain what "opportunities for discrete trials" meant.[47] There is no other evidence in the record about the District's supposed offer of ABA programming. All that is left is the IEP's reference to the BCBA without any further detail. *Second*, As Parents' opening explains, Granelli's testimony was – again – impermissible retrospective testimony under *R.E.*[48]  The IHO and SRO both erred by admitting and relying on it to bolster the June 14, 2023 IEP. They also erred by finding that Granelli's vague,

---

[42] *Id*. at 18 (citing June 14, 2023 IEP, DE35-36).
[43] DE44.
[44] PLMOL at 24.
[45] Def. Br. at 14.
[46] T57:25; PLMOL at 22.
[47] PLMOL at 22 (citing T85:2-17).
[48] *Id*. at 21-24 (explaining how the SRO's and IHO's reliance on Granelli's retrospective ABA testimony violated R.E.'s directive to safeguard parents' "considerable reliance interests" on the text of the IEP they challenge at a due process hearing).

self-negating testimony proved that the District met Dr. Marks' ABA recommendations. The Court should disallow Granelli's unpersuasive retrospective evidence here.

Parents also explained that contemporaneous emails prove that the District was not able to provide M.K. with a BCBA for six hours daily.[49] The SRO dismissed these emails as speculation and mere doubt; however, the Court owes the SRO's strained interpretation of these emails no deference.[50] Ms. Iannarone opined that it was highly implausible that any BCBA would undertake a 1:1 aide position for six hours daily.[51]

The District next contends that its September 6, 2023 IEP proposing a 6:1:2 program at BOCES Willet Avenue was a *second* offer of FAPE.[52] *First*, it ignores that the meeting was late, coming 11 business days after Parents sent the District a ten-day-letter.[53] *Second*, the IHO and SRO erred by allowing the District to defend both IEPs.[54]

The IHO and SRO also erred by *again* relying on retrospective testimony that materially changed the September 6, 2023 IEP's offer of FAPE.[55] The District now asks the Court to consider testimony from BOCES Principal Margot Owen that Willet Avenue offered an "ABA based" program.[56] But the September 6, 2023 IEP did not provide for ABA instruction, and did not include the details the District now offers.[57]

This case closely resembles one of the three actions consolidated in *R.E.* The parents of R.K. obtained a private evaluation that recommended 40 hours of 1:1 ABA therapy per week.[58]

---

[49] PLMOL at 25-26.
[50] *Id*. at 26.
[51] PLMOL at 25 (citing SPE 009-11, Iannarone Decl. at ¶¶ 65, 76).
[52] Def. Br. at 15.
[53] PLMOL at 26.
[54] *Id*.
[55] PLMOL at 28.
[56] Def. Br. at 16.
[57] PLMOL at 27; Def. Br. at 16.
[58] *R.E.*, 694 F3d at 179.

8

The district's proposed IEP did not offer ABA, but instead offered a 6:1:1 class with speech and language therapy and occupational therapy.[59] R.K.'s parents rejected the IEP because it lacked adequate 1:1 ABA support, and, after sending a ten-day-letter, enrolled R.K. at private school.[60]

At the due process hearing, the district called a classroom teacher, Ms. Perez, who testified that she would use the TEACCH program, which incorporated "some elements of ABA" and that she conducted 1:1 ABA sessions with students.[61] The IHO held that there was a "clear consensus" that R.K. needed an ABA program and that the proposed IEP, even considering Perez's testimony, offered too little ABA support, and found the District denied R.K. a FAPE.[62]

The District appealed to the SRO, who reversed the IHO's decision. As the *R.E.* court summarized:

> SRO Kelly … revers[ed] the IHO and … found that the IEP provided an adequate program to address R.K.'s speech and language deficits as well as her motor sensory deficits…. Relying extensively on Perez's testimony about her classroom methods, the SRO found that the proposed 6:1:1 program was sufficient. He noted that Perez used TEACCH methodology with some elements of ABA, and stated that R.K. would have received 25 minutes of 1:1 ABA instruction per day, including manding. … Ultimately, the SRO found that "[t]he hearing record indicates that the recommended 6:1+1 class would have provided the student with a small, highly structured classroom environment along with the opportunity to interact with peers. . . . In addition, the student would have received individual instruction and that instruction would have been ABA-based."[63]

Parents then filed an appeal in the district court.[64] The district court excluded Perez's retrospective testimony and vacated the SRO's decision, as the *R.E.* court explained:

> Notably, Judge Mann rejected testimony offered by the Department to attempt to overcome omissions in the IEP: "More broadly, the Court rejects, as fundamentally flawed, the DOE's invitation to the Court ***to overlook deficiencies in the IEP based***

---

[59] *Id.*
[60] *Id.*
[61] *Id.* at 179-80.
[62] *Id.* at 180.
[63] *Id.* at 180-81
[64] *Id.* at 181.

*on subsequent testimony that the recommended placement might have later sought to cure those deficiencies."*[65]

The Second Circuit then affirmed the district court, holding in relevant part:

The SRO's reliance on Perez's testimony was inappropriate. R.K.'s parents had no knowledge or guarantee from the IEP that R.K. would have received a teacher who conducted daily 1:1 ABA sessions with each student. … [W]e agree with the magistrate judge that the SRO's conclusion is contrary to the overwhelming weight of the evidence.[66]

The parallels between *R.E.* (R.K.'s action) and M.K.'s case are clear. In both cases:

- There was a clear consensus that the child needed intensive ABA therapy.

- The IEPs did not expressly offer such a program.[67]

- The districts called witnesses to cure the flaws in the IEPs with retrospective details about ABA programing not found in the IEP.

- The SRO (here, the IHO too) "relied upon" cited the retrospective testimony to hold that the district had in fact offered an ABA program consistent with the clear consensus.[68]

The chief difference between *R.E* and this case is that in *R.E.*, the retrospective testimony described a far more robust, ABA-like program than Ms. Granelli and BOCES Principal Owen described in their own retrospective testimony. Following *R.E.*, the Court should exclude Granelli's and Owen's retrospective testimony. Moreover, whether or not bolstered through impermissible retrospective testimony, both of the District's IEPs failed to offer programs consistent with the "clear consensus" that M.K. needed a legitimate ABA program.[69]

---

[65] *Id*. (Emphases added).

[66] *Id*. at 193-94.

[67] R.E. also undercuts, from a legal standpoint, the opinion of the District's expert, Jaime Webber, that ABA "does not need to be specifically stated on an IEP in order to be implemented in a school setting."

[68] The District candidly concedes that the SRO relied on Owens' retrospective testimony to find that it offered M.K. a FAPE. *See* Def. Br. at 17 ("The SRO relied upon Principal Owen's credible testimony concerning the Willet Avenue BOCES program…."). SDE 003-04, ¶ 18.

[69] The District inverts this rule by arguing that Parents' objection to retrospective details about Ogden Elementary and BOCES is "speculative in nature" because they never enrolled M.K. in either program. Def. Br. at 16-17, 20. While courts have indeed held that parents ordinarily should not speculate that a district would not have implemented the program actually written in an IEP, "*R.E.* does not foreclose all prospective challenges to a proposed placement school's capacity to implement a child's IEP. To conclude otherwise would require parents to send their child to a facially deficient placement school prior to challenging that school's capacity to implement their child's IEP, which

10

**I. (D) – BCBA Iannarone's affidavit and testimony confirm that the District did not offer M.K. a FAPE for the 2023-2024 school year.**

The District next makes four arguments to reframe Parents' critique of its offers of FAPE and Ms. Iannarone's affidavit and testimony:

- Parents "fixate on and nitpick a single exploratory footnote" from the SRO and mischaracterize his opinion.[70]

- Ms. Iannarone's evidence "merely sharpens professional disagreement about methodology and setting."[71]

- The SRO's words meant more than they mean on their face.[72]

- Parents cannot "have it both ways" by attacking the Ogden Elementary IEP as insufficiently intensive and then attack BOCES Willet Avenue as too restrictive.[73]

Parents will address each argument in turn.

**1. SRO's Footnote 12 was a substantive holding. Parents are not nitpicking by refuting it with BCBA Iannarone's testimony.**

In Parents' Motion to Supplement the Administrative Record,[74] they explained to Judge Wicks why footnote 12 in the SRO's decision advanced incorrect claims about ABA, which the District never made at trial. They explained:

> That this holding is in a footnote makes it no less important. If language is necessary to the decision, it is part of a holding, not dicta…. Moreover, if the SRO's findings here are not a holding, then his decision would be even more flawed for failing to decide the central substantive question here: Did the IEP provide M.K. a valid ABA program within its offer of FAPE?[75]

Parents argued that they should be permitted to respond to the SRO through Ms. Iannarone's affidavit as a matter of fairness and completeness, as her affidavit was relevant,

---

is 'antithetical to the IDEA's reimbursement process.'" *M.O. v. N.Y.C. Dep't of Educ.*, 793 F.3d 236, 244-45 (2d Cir. 2015).

[70] Def. Br. at 18.

[71] *Id*. at 17.

[72] *Id*. at 18-21.

[73] *Id*. at 17-18.

[74] ECF 13.

[75] *Id*. at 4-5 and n.27.

11

noncumulative, and useful to the Court.[76] In response, the District accused Parents of attempting to "parse" the SRO's language in footnote 12, but it did not minimize it as an "exploratory footnote," as it does now.[77]

Judge Wicks reviewed the parties' arguments and agreed that, in light of the SRO's decision to go beyond the record, fairness dictated that Parents be allowed to respond to the SRO's new arguments, holding in relevant part:

> The plain language of the [IDEA] warrants inclusion of the affidavit of Ms. Iannarone to the administrative review file. Ms. Iannarone's observations rebut the very conclusions made by the SRO that had not been raised or made earlier in the record.[78]

Parents are not "parsing" or "nitpicking" the SRO's language; they are addressing his novel, erroneous, and dispositive substantive holding that the District's June 14, 2023 offered M.K. a valid ABA program.

**2. Ms. Iannarone's affidavit and testimony show why the June 14, 2023 IEP failed to describe a valid ABA program.  She was not merely expressing a professional disagreement with the District.**

The District argues that Nicole Iannarone's opinion "sharpens professional disagreement" between the parties.  But the SRO did not cite evidence – let alone professional opinion – in the record defining or describing an ABA program, he merely deemed the IEP to have offered it. As explained in Parents' opening, Iannarone's affidavit and testimony show that, contrary to the

---

[76] *Id.*

[77] ECF 16 at 7.

[78] *Y.E. v. Hewlett Woodmere Union Free Sch. Dist.*, No. 25-CV-01481 (JMA) (JMW), 2025 WL 2637680, at *8 (E.D.N.Y. Sept. 12, 2025). The District did not file an objection to Judge Wicks' ruling and so may not "assign error" to it now.  Fed. R. Civ. P. 72(a) ("When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision. A party may serve and file objections to the order within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to.").

SRO's novel holding, the two District IEPs omitted "essential components of an ABA program."[79] She wasn't refuting or disagreeing with a positive claim by the District (or SRO) about the elements or components of an ABA program.

**3.  The SRO's words mean what they mean, not what the District reads into them.**

In a tacit concession that the SRO failed to explain how the June 14, 2023 IEP offered M.K. a valid ABA program, the District offers a long exposition on what it claims the SRO meant to write.[80]  In doing so, it embellishes the due process record with thoughtful-sounding descriptions of what an ABA program should look like. (Recall that the lone description of the District's proposed ABA program was the line "Behavior Intervention Services: Individual 09/05/2023 - 06/26/2024, 1 x Daily, 6hr. School.")[81]

For example, it argues that the SRO was actually describing services "to be implemented continuously across M.K.'s instruction, therapies, transitions, and behavior supports, rather than as a discrete, pull-out ancillary service."[82] But he did not write that.  He wrote that ABA was "an individual service designed to deliver individual behavioral support to the student throughout the school day."[83]

Next, it argues that the SRO was "responding" to Parents' argument –

that the recommendation was not ABA at all and explaining that six hours per day of direct BCBA behavior-analytic support, layered onto a small, highly supported special class, is precisely the kind of intensive, individualized ABA implementation contemplated by Dr. Marks' recommendation in his evaluation report and discussed at the CSE.[84]

---

[79] PLMOL at 16-18, 21, 24-25 (citing SPE007-08, ¶50, where Iannarone explained that the IEPs did not make ABA "the primary modality to develop goals and teach [M.K.] new skills.").
[80] Def. Br. at 18-21.
[81] DE35.
[82] Def. Br. at 18.
[83] SD18 n.12.
[84] Def. Br. at 18.

As an initial matter, this claim is revealing. The SRO should not "respond" to either party's argument; rather, his role is to evaluate parties responses to each other's arguments, then give a reasoned explanation, grounded in the record, for why one prevails. The District is correct that the SRO was "responding" to Parents by making an argument on the District's behalf.[85] The problem is that he made a factually incorrect argument, which the District is now hoping to cure.

In arguing to the IHO and SRO, the District was content to recite Ms. Granelli's testimony – which she could not even explain – that the program "was also anchored in ABA principles as there were "opportunities for discrete trials" and an "ABA therapist recommended six hours daily."[86] It never offered Parents, or argued that it offered them, direct BCBA behavior-analytic support, "layered onto a small, highly supported special class." Thus, even *had* the SRO given the explanation the District claims he really meant, that explanation would have been an impermissible, unsupported, *post hoc* embellishment of the IEP's written offer.

*R.E.*'s lesson is that parents have a "considerable reliance interest" that bars districts from offering new evidence *at trial* to embellish what an IEP promised on its face.[87] That reliance interest applies with more force to bar a hearing officer or SRO from embellishing an IEP *after trial* to find that the district offered a FAPE.

The District next argues that the SRO did not actually claim that BCBAs all have "background, expertise, credentials in working with youth on the autism spectrum."[88] The SRO wrote:

---

[85] The entire SRO opinion can be read not merely as a systematic takedown of Parents' arguments, but also as an effort to construe the entire record in a light favorable to the District. There is little balance in his discussion of M.K.'s progress. Parents do not assert that the SRO had an improper bias, just that his decision was imbalanced and therefore not "thorough" or "well-reasoned."

[86] P72 (Dist. SRO MOL); *see also* IE72 (Dist. IHO Brief: "Further, this program was also anchored in ABA principles as there were "opportunities for discrete trials" and an "ABA therapist recommended six hours daily" for M.K.

[87] *R.E.*, 694 F.3d at 184.

[88] Def. Br. at 20.

14

[I]n his description the psychologist identified his preferred program for the student as a program where the staff "working with [the student] hav[ing] formal training, background, expertise, credentials in working with youth on the autism spectrum" (Tr. p. 577); *something that would be addressed by having a BCBA with the student six hours per day*.[89]

The only logical interpretation Parents can make of the "something that would be addressed" clause is that a BCBA, by virtue of his or her title, would necessarily fit Dr. Marks' preferred criteria.[90]

The District next argues that Parents "cannot have it both ways" – calling Ms. Iannarone as a BCBA with expertise in autism and then arguing that the District would not have provided an autism expert.[91]

Parents have not argued that the District would not have provided an autism expert. Ms. Iannarone merely pointed out that the SRO made another incorrect factual claim:

SRO Bates is also wrong to assume that any BCBA would have "formal training, background, expertise and credentials working with youth on the autism spectrum." Many BCBAs do work with youth on the autism spectrum, but not all do. BCBAs vary dramatically in their formal training, background and areas of experience and expertise. Some BCBAs graduate without ever administering a skills-based assessment and may have never conducted an FBA in a natural setting. Moreover, many BCBAs are graduating, passing their boards and may have never stepped foot in a public-school setting.[92]

Iannarone's specific point was about the SRO making an incorrect assumption, not about what the District would have offered.[93] Parents are not trying to "have it both ways," their BCBA with expertise in autism opined that not all BCBAs have such expertise.

---

[89] SD-18 (emphasis added).

[90] Ms. Webber opines, in passing: "I do not read the [SRO's] decision as coming to such a conclusion." SDE 005, ¶ 30 (citing SD 18, n.12). But she does not offer an alternative reading, let alone a plausible one.

[91] Def. Br. at 20.

[92] SPE 011-12, ¶ 75. Ms. Webber addressed but did not refute Iannarone's observation, stating only that her agency assesses "the specific needs of the student in order to assign a person appropriately trained and experienced to meet that student's individual needs." SDE 005-06, ¶ 31.

[93] Parents do argue that the District would not have been able to provide *any* BCBA to be M.K.'s 1:1 aide for 6 hours daily (PLMOL at 25), which necessarily implies that it would not have been able to offer a BCBA with a "background, expertise, credentials in working with youth on the autism spectrum." And Iannarone opined that in

**Response to Point II.**

**Ms. Iannarone properly opined about established facts in the record. She explained, based on her expertise and experience, why the June 14, 2023 IEP did not offer a program that met the "clear consensus" about M.K.'s needs.**

The District argues that Ms. Iannarone's expert opinion is "retrospective."[94] This is true in that she is opining on the past, which is something experts routinely do. Her opinions are not improperly retrospective, however, or "inconsistent with the administrative record."[95] As Judge Wicks wrote after reading her report: "Ms. Iannarone's observations rebut the very conclusions made by the SRO that had not been raised or made earlier in the record."[96]

Contrary to the District's claim that Parents engaged in a fight over methodology,[97] there was and is a "clear consensus" – that M.K. needed a true ABA program.[98] The District's comment that Iannarone did not consider M.K.'s supposed past progress[99] is moot because the parties agreed that he needed a very different program for 2023-2024.

Ms. Iannarone was therefore not advocating for one ABA methodology over the District's ABA methodology. Her point was that, despite the clear consensus that he needed ABA, the District's IEP offered M.K. no ABA methodology at all: the June 14, 2023 IEP lacked the essential components and minimum standards of any ABA program provided with fidelity.[100]

---

her experience, for several reasons, it would be unrealistic and impracticable to hire a BCBA for that role. SPE 009, ¶¶ 63-65.

[94] Def. Br. at 22.

[95] *Id*.

[96] *Y.E.*, 2025 WL 2637680, at *8.

[97] Def. Br. at 23.

[98] PLMOL at 15-16.

[99] Def. Br. at 24.

[100] *Id*. at 16-18, 24-25.

Similarly, while the District gives a long discussion of the general principle that methodology need not be prescribed on an IEP,[101] that rule doesn't apply here because of the clear consensus about M.K.'s needs.[102]

Finally, the District argues that its expert, Ms. Webber, "explained with specificity how the District's program incorporated ABA principles, data-driven adjustments, and layered supports and why it was appropriate for a student with M.K.'s profile."[103] *First*, this claim undermines its criticism of Iannarone, in that Webber, unlike Iannarone, never met M.K., but the District believed her competent to opine on his needs. *Second*, this *description* of Webber's testimony closely tracks the District's recasting of footnote 12, discussed above. But Webber never offered testimony about what the District's IEP offered. Instead, she opined that there was *no reason to rule out* that the IEP might have offered more than an individual service:"[N]othing in the description on the IEP would prevent the BCBA from collaborating with the other staff assigned to M.K. during the school day." Retrospective or not, that opinion does not cure the District's IEP.

The District bore the burden to prove it offered M.K. a FAPE. The record shows little, *specific* evidence that he made meaningful progress when he was at the District. And it contains little information to support the District's argument that it offered M.K. a valid ABA program for the 2023-2024 school year in either of its IEPs. The Court should find that M.K. was denied a FAPE for all three school years at issue.

---

[101] Def. Br. at 24-25.
[102] *R.E.*, 694 F.3d at 194.
[103] Def. Br. at 26.

17

**Response to POINT III.**[104]

**Imagine Academy is an ideal placement for M.K. The Court should find that it was appropriate under the Second Prong of the *Burlington/Carter* test.**

a. **The Court should decide this issue rather than remanding to the SRO or IHO. Parents have exhausted their administrative remedies and should not have to incur additional delay and expense of "re-exhaustion."**

This Court should decide whether Imagine Academy was an appropriate private school. The Court is more than capable of deciding the issue. The record is developed. Federal courts regularly apply the *Burlington* Prong II factors. It is efficient and equitable to decide this entire case now. The IDEA has fast timelines to give children educational stability. A remand could take months (or longer) and cost thousands of dollars, making this even more of a war of attrition than it has become after litigation in three venues. No doubt the aggrieved party following a hypothetical remand would return to this Court, only to make the same arguments made now.

The District asks the Court to "protect the IDEA's administrative process" by remanding to the SRO.[105] Given that the SRO seldom receives new evidence, its request is a concession that there are no facts to develop. Nothing prevented the SRO from reaching Prongs II or III. Where, as here, the IHO and SRO err by denying parents relief on Prong I, then decline to rule on Prongs II and III – despite those issues being developed at trial and briefed – parents should not bear the delay and financial brunt of those errors. Parents here tried a multi-day hearing and appealed to the SRO. The IDEA's administrative process was followed. That both hearing officers stopped work after Prong I was beyond Parents' control. To insist on "re-exhaustion" in these unique circumstances would frustrate rather than vindicate the IDEA's administrative scheme.

---

[104] Parents addressed the second prong of the Burlington/Carter test in their opening brief and incorporate that argument. The District has made additional points, however, which Parents will address here.

[105] *Id.* at 29-30.

18

**b. Imagine Academy was an appropriate placement for M.K. The Second Circuit has long limited the importance of a private school's restrictiveness as a factor under the Second Prong of *Burlington/Carter***

The District first contends that Imagine Academy was inappropriate for M.K. because it is "highly restrictive" – a program only for students with disabilities.[106] The Second Circuit rejected this argument more than a decade ago:

> Restrictiveness may be relevant in choosing between two or more otherwise appropriate private placement alternatives, or in considering whether a private placement would be more restrictive than necessary to meet the child's needs, but where the public school system denied the child a FAPE, the restrictiveness of the private placement cannot be measured against the restrictiveness of the public school option.[107]

*C.L.* did allow restrictiveness to be considered, but only as a non-dispositive factor in a Prong II analysis, weighed against the overall benefits of the placement.[108] And the District makes no effort to weigh how Imagine's restrictiveness negates its overall fit for M.K.

As Parents explained in their opening, Imagine was an appropriate placement.[109] The District now argues that it did not provide M.K. parent training or vision therapy.[110] Following the Supreme Court's *Carter* decision,[111] however, it is clear that a private placement is not in appropriate for failing to provide everything a child would be afforded in public school. As the *C.L.* court explained: "parents are not barred from reimbursement where a private school they choose does not meet the IDEA definition of a free appropriate public education."[112] The District then argues that M.K. did not receive the level of 1:1 support at Imagine that he was afforded at

---

[106] Def. Br. at 27.

[107] *C.L. v. Scarsdale Union Free Sch. Dist.*, 744 F.3d 826 (2d Cir. 2014).

[108] *Id.* at 840.

[109] PLMOL at 28-30.

[110] Def. Br. at 27.

[111] *Florence Cnty. Sch. Dist. Four v. Carter ex rel. Carter*, 510 U.S. 7 (1993).

[112] *C.L.*, 744 F.3d at 836-37 (quotes omitted) (quoting *Frank G. v. Bd. of Educ.*, 459 F.3d 356, 363 (2d Cir. 2006); 20 U.S.C. § 1401(9)).

the District.[113] But it ignores that Imagine has nearly twice as many staff as students, including four BCBAs, and offers a program based in ABA with highly trained staff.[114]

## Response to POINT III

**Discussion of equitable considerations: The equities support a full award of tuition reimbursement.**

The District argues that "equitable considerations independently bar or warrant substantial reduction of reimbursement."  The Court should reject this suggestion.[115] The District argues that Parents failed to provide it a *second* ten-day-notice following the September 6, 2023 BOCES meeting.[116] But "second notice" is not a rule.[117] Parents gave the District proper notice on August 22, 2023 that they had rejected the June 14, 2023 IEP and intended to place M.K. privately.[118] The District convened a CSE eleven business days later and, on September 6, 2023, offered the BOCES placement.  That was the District's chance to cure problems with the June 14 IEP. Parents' responsibility was to cooperate and allow the District to address their concerns. They did so.  When the District failed to offer an appropriate placement at BOCES, Parents declined to enroll M.K. there. This sequence is entirely commonplace under the IDEA's unilateral placement framework. There are no equitable considerations that would warrant reducing or denying reimbursement.

## IV. CONCLUSION

Wherefore, for the reasons stated in this memorandum, their opening memorandum, and reply memorandum. Parents respectfully request that the Court DENY the District's Motion for Judgment on the Administrative Record.

---

[113] Def. Br. at 27.
[114] T728:2-730:19.
[115] Parents refer the Court to their opening, which also discusses equitable considerations. PLMOL at 30.
[116] Def. Bt. at 28.
[117] Neither of the cases the District cites hold that it is a rule. Such a rule would lead to an absurd outcome: a district could continue to offer placements and parents would have to continue to send ten-day-notices.
[118] PE48-49.

Dated: February 6, 2026
Plymouth, MA

Respectfully Submitted,

/s/ Benjamin J. Hinerfeld, Esq.
**Law Office of Benjamin J. Hinerfeld**
9 Stoddard Street
Plymouth, MA 02360
1528 Walnut Street, Suite 1100
Philadelphia, PA 19102
447 Broadway 2nd Floor
New York, NY 10013
Office (508) 591-0385
Cell (215) 694-7432
Fax (215) 689-2423
Ben@hinerfeldlaw.com

Nicole D. Venditti, Esq
**Law Offices of Susan Deedy & Associates**
Attorneys for Plaintiffs
1600 Stewart Avenue, Suite 609
Westbury, NY 11590
Office: (516) 221-8133
Fax: (516) 221-3011
nvenditti@susandeedylaw.com

*Co-Counsel for Plaintiffs*

21

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
_____X

**Y.E. and M.K.** individually, and on behalf of their child,
M.K., a minor,                                             **Case No. 2:25-cv-01481-JMA-JMW**

Plaintiffs,

     -against-                                         Individuals with Disabilities
                                                           Education Act;
                                                           N.Y. Educ. Law § 4401 *et seq*.
**Hewlett Woodmere Union Free School District**

Defendant.
_____X

## CERTIFICATE OF SERVICE

I, Benjamin J. Hinerfeld, certify that on February 6, 2026, served *via electronic mail* the

above Memorandum of Law in Opposition to Defendant's Motion for Judgment on the

Administrative Record on Michael Vigliotta, Esq. and Sarah Gyimah, counsel for Defendant,

Hewlett Woodmere Union Free School District.


Dated: February 6, 2026                /s/ Benjamin J. Hinerfeld
Plymouth, Massachusetts                Benjamin J. Hinerfeld
                                       **LAW OFFICE OF BENJAMIN J. HINERFELD**
                                       Attorneys for Plaintiffs
                                       9 Stoddard Street
                                          Plymouth, MA 02360
                                       1528 Walnut Street, Suite 1100
                                          Philadelphia, PA 19102
                                       447 Broadway 2nd Floor
                                          New York, NY 10013
                                       Office (508) 591-0385
                                       Cell (215) 694-7432
                                       Fax (215) 689-2423
                                       Ben@hinerfeldlaw.com

22