UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------X
Y.E. and M.K. individually, and on behalf of their
child, M.K., a minor,

*Plaintiffs,*

**REPORT AND<br>RECOMMENDATION**

-against-

25-CV-01481 (JMA) (JMW)

HEWLETT WOODMERE UNION FREE
SCHOOL DISTRICT,

*Defendant.*

------------------------------------------------X

**A P P E A R A N C E S:**

> Nicole Diane Venditti
> **Law Office of Susan J. Deedy & Associates**
> 1600 Stewart Avenue, Suite 609
> Westbury, NY 11566
>
> -and-
>
> Benjamin J Hinerfeld
> **Law Office of Benjamin J. Hinerfeld**
> 9 Stoddard Street
> Plymouth, MA 02360
> *Attorneys for Plaintiffs*
>
> Michael Gerard Vigliotta
> Sarah Afoa Gyimah
> **Volz & Vigliotta, PLLC**
> 280 Smithtown Blvd.
> Nesconset, NY 11767
> *Attorneys for Defendant*

**WICKS,** Magistrate Judge:

Plaintiffs Y.E. and M.K., individually and on behalf of their minor child, M.K.

("Plaintiffs") commenced this action against Hewlett Woodmere Union Free School District

1

("Defendant" or "District") seeking: (i) reversal of the decisions by the impartial due process hearing ("IHO") and State Review Officer ("SRO"), whereby denying M.K. of a Free Appropriate Public Education ("FAPE") for the years of 2020 through 2024 (the "subject school years") and (ii) attorneys' fees pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.* (*See generally*, ECF No. 1.) This Court previously granted Plaintiffs' Motion to Supplement the Administrative Record. (ECF No. 20.) Now before the Court by way of referral from the Honorable Joan M. Azrack (*see* Electronic Order dated 5/26/2026) is Defendant's Motion for Summary Judgment (ECF No. 27), and Plaintiffs' Motion for Judgment on the Pleadings (ECF Nos. 25, 29.)[1]  For the following reasons, the undersigned respectfully recommends that the Defendant's Motion for Summary Judgment (ECF No. 27) be **GRANTED** and Plaintiffs' Motion for Judgment on the Pleadings (ECF No. 29) be **DENIED**.

**BACKGROUND**

### I.    **Procedural Background**

On March 17, 2025, Plaintiffs filed their Complaint against the District. (ECF No. 1.) Defendant filed its Answer on April 14, 2025. (ECF No. 8.) On June 12, 2025, a status conference was held (*see* ECF No. 11), where the Court granted Plaintiffs leave to file a Motion for Additional Testimony. (ECF No. 12.) Following briefing on the request (ECF Nos. 13, 16-17) and oral argument, the Court granted Plaintiffs' Motion to Amend the Administrative Record. (ECF No. 20.) Once the limited discovery was completed, the parties were directed to move for summary judgment in accordance with the Judge Azrack's Individual Rules. (Electronic Order dated 10/30/2025.)  The parties requested that the Court waive the requirement to submit Local Civil Rule 56.1 statements, which the Court granted. (*See* ECF No.23; Electronic

---

[1] The Motion for Judgment on the Pleadings at ECF No. 25 should be denied as *moot* due to the corrected filing found at ECF No. 29.

Order dated 12/8/2025.) This "is a common practice in IDEA cases that are based on an undisputed administrative record. Because 'many of the relevant facts are not disputed here[, t]he below recitation of facts therefore is largely drawn from the SRO and IHO decisions.'" *Ambrister v. Banks*, No. 24-CV-8403 (JGLC), 2026 WL 672964, at *2 (S.D.N.Y. Mar. 10, 2026) (internal citations omitted).

Thereafter, Plaintiffs filed their Motion for Judgment on the Pleadings (ECF No. 25), which was later corrected in accordance with Judge Azrack's Electronic Order (*see* Electronic Order dated 5/4/2026; ECF No. 29), and Defendant filed its Motion for Summary Judgment. (ECF No. 27.) The pending motions were then referred to the undersigned for a Report and Recommendation. (*See* Electronic Order dated 5/26/2026.)

## II.   **Factual Background**

All facts are taken from the "Administrative Record" which the parties electronically submitted through the Court's electronic evidence portal. (*See* ECF No. 27-1 at ¶ 2 ("The certified administrative record from Application of a Student with a Disability, Appeal No. 24-468, has been uploaded via electronic filing to the Court under seal by the Plaintiffs. Such certified record was uploaded in accordance with the orders of the Court through the Court's digital media exhibit submission procedures.").) All citations set forth below are to the Administrative Record unless otherwise noted.

### a.   *Student Background and Offerings for Subject School Years*

M.K. is a child with "a complex medical history" who was diagnosed with a genetic mutation that is linked to his diagnoses of Autism Spectrum Disorder, Attention Deficit Hyperactivity Disorder, intellectual disability, anxiety, seizure disorders, clubbed foot, brain injury and other ailments. (I5; SD2-3.)  At the time of the IHO decision, M.K. was 8 years old. (*See*

I5.) Thus, there is no dispute that M.K. is entitled to a free education under the IDEA that is appropriate as he is a child with a disability.

During the 2020-2021 school year, M.K. attended Kindergarten at the Franklin Early Childhood Center where he was enrolled in a 12:1:2 program and received occupational therapy, physical therapy, speech therapy, and a 1:1 aide. (IE21; SD3.) During the 2021-2022 school year, M.K. was again enrolled in a 12:1:2 program and received additional services as recommended by the March 2021 Committee on Special Education ("CSE"). (I5; SD3.) M.K. struggled academically and engaged in tantrum behaviors in certain classroom scenarios according to his first-grade teacher. (I10-11.) Despite these difficulties, M.K.'s reading level progressed from "pre-A" to "A," which meant he was developing an understanding of print. (I10.) Furthermore, M.K.'s progress report of goals as well as his 2021-22 report card indicated progress in some of his academic goals. (I11.)

In March of 2022, the CSE met as part of the annual review to create an Individualized Education Program ("IEP") for M.K. for the 2022-2023 academic year. (I12.) The CSE recommended that M.K. be placed in a 12:1:1 special class in another of the District's schools. (*Id*.) To further support M.K.'s needs, the CSE recommended that a 1:1 teaching assistant be available to him throughout the day. (*Id*.) The District also provided functional communication training, differentiated work, and frequent breaks. (I13.) In April of 2023, the CSE convened for a request review of M.K.'s 2022-2023 IEP and modified the plan to include three hours of daily intervention services and additional support for school staff. (SD4). Throughout March and April of 2023, M.K. received a private neuropsychological evaluation from Dr. David J. Marks ("Dr. Marks") who recommended that M.K. receive twelve months of highly specialized education in an alternate setting with a small student-teacher ratio. (*Id*. (citing PE 15-PE 31).) Dr. Marks

further recommended that this program be highly structured, individualized, and rooted in the principles of applied behavior analysis ("ABA"). (*Id*.)

On June 14, 2023, the CSE convened for the annual review of M.K.'s progress. (I15.) During this review, the CSE also considered Dr. Marks' findings from his evaluation. (*Id*.) The CSE recommended a district 8:1:2 special class with additional services including six hours per day of individual behavior intervention services provided by a board-certified behavior analyst ("BCBA"), speech therapy, and physical therapy. (SD5.) Assistive technology devices and software were also recommended by the CSE. (*Id*.) On or around June 23, 2023, the District sent a prior written notice and request for parental consent to share information with out-of-district programs which indicated that the parents disagreed with the recommendations of the June 2023 CSE. (*Id*.) The prior written notice also indicated that Plaintiffs requested the CSE to consider an out-of-district program for M.K. for the 2023-2024 school year. (*Id*.) On August 16, 2023, Plaintiffs enrolled M.K. in the Imagine Academy ("Imagine") located in Brooklyn for the 2023-2024 year. (S3, S5.) On August 22, 2023, Plaintiffs informed the District that they rejected the recommended program from the June 2023 CSE and that they intended to seek payment for cost of M.K.'s tuition at Imagine, transportation costs, and compensatory education services. (SD5-6.) On August 30, 2023, an out-of-district Board of Cooperative Educational Services ("BOCES") program informed the District that M.K. was accepted into its program for the 2023-2024 school year. (SD6.) The BOCES program offered a 6:1+2 special class, five 30-minute sessions of speech-language therapy per week, three 30-minute sessions of individual physical therapy per week, two 45-minute sessions of vision services per week, and 1:1 aide services. (*Id*.) The CSE reconvened on September 6, 2023, for a request review to amend M.K.'s 2023-24 IEP to recommend that M.K. attend the BOCES program. (*Id*.) Notwithstanding the

recommendations from the CSE, Plaintiffs continued to have M.K. attend Imagine for the 2023-2024 school year. (*Id*.)

### b. *The IHO Decision*

On January 5, 2024, Plaintiffs filed a due process complaint alleging that the District denied M.K. a FAPE for the subject school years. (*Id*.) In their complaint, Plaintiffs allege that the CSEs failed to provide M.K. with appropriate annual goals and failed to revise M.K.'s IEPs to address M.K.'s lack of progress. (*Id*.) As relief, Plaintiffs requested an order finding that M.K. was denied a FAPE for the subject school years; directing the District to fund the M.K.'s placement at Imagine for the 2023-2024 academic year; directing the District to reimburse the parents for Dr. Marks' evaluation of M.K.; and directing the District to provide compensatory education. (SD6-7.)

An impartial hearing occurred on March 6, 2024, and concluded on May 16, 2024. (SD7.) Jean M. Lucasey, Esq., the assigned IHO, concluded that the District offered or provided M.K. with a FAPE during the 2021-22, 2022-23, and 2023-24 school years. (I1; I11; I14-15; I19-20; SD7.)

The IHO relied on the testimony of M.K.'s first-grade teacher, Alexandra English ("English"), when determining that M.K. was provided a FAPE for the 2021-22 school year. (I10-11; T304-07.) English explained how M.K.'s goals were implemented in the classroom and how they were related to his needs. (I10.) She further testified that after M.K. exhibited interfering behaviors in class, she recommended a functional behavior assessment to better understand the student's needs. (I11.) English testified that this plan was moderately successful and that M.K. responded positively to its structure. (*Id*.) English's testimony along with M.K.'s

demonstrated progress on his report card led the IHO to conclude that M.K. was offered a FAPE for the 2021-22 academic year. (*Id*.)

Similarly, the IHO relied on the testimonies of English and M.K.'s second grade teacher, Barbara Mezrahi ("Mezrahi"), in determining that M.K. was offered a FAPE for the 2022-23 academic year. (I14; T179-84.) At the March 2022 CSE, English recommended that M.K. be placed in a more restrictive class setting for the second grade. (I12.) The CSE considered M.K.'s academic struggles and his social abilities when recommending the 12:1:1 program plus the support of a 1:1 teaching assistant for the 2022-23 school year. (*Id*.) M.K.'s behavior service provider for the 2022-23 school year testified that she provided his second-grade teachers with additional support and revised M.K.'s plan in April 2023. (I13-14.) This new plan recommended adding Behavior Intervention Services ("BIS") daily for 3 hours. (I14.) Mezrahi's testimony confirmed that the BIS was implemented as recommended. (*Id*.) In light of these testimonies, the IHO found that M.K.'s IEP was reasonably calculated to his needs and that it resulted in progress. (I14-15.)

Finally, the IHO determined that both the District and BOCES IEPs offered M.K. a FAPE for the 2023-24 school year. (I20.) During the June 2023 CSE, the assistant director of special education who chaired the CSE found that the recommended 8:1:2 program adhered to Dr. Marks' recommendations offering opportunities for discrete trials and an ABA therapist. (I16-17.) In light of the CSE's consideration of Dr. Marks recommendation and its offering of a tailored education plan for M.K., the IHO found the 8:1:2 District IEP offered sufficient services to meet M.K.'s individual needs. (I18.) The IHO relied on statements from the principal of the BOCES program, Marget Owen ("Owen") when determining that the BOCES program was also an acceptable placement for M.K. (I19.) At the September CSE, Owen testified that the teacher

assigned to the recommended classroom was experienced in using ABA techniques and that the staff assigned to the 6:1:2 program were capable of implementing behavior intervention plans. (*Id.*) Accordingly, the IHO found that the BOCES IEP was an appropriate placement for M.K. for the 2023-2024 school year. (I19-20.)

Having found that M.K. was provided with an FAPE for the subject years, the IHO declined to examine whether Imagine was a suitable alternative placement for M.K. or whether the equities favored reimbursement. (I27.)

### c. *The SRO Decision*

Plaintiffs appealed the decision of the IHO to an SRO, Justin P. Bates, contending that the IHO failed in determining that the District had met its burden to show that M.K. had been provided a FAPE for the subject school years and that the IHO discounted expert testimony. (SD8). The SRO found that its assessment of each IEP should only consider information that was available to the CSEs at the time they were convened. (SD13.) The SRO relied on the same evidence as the IHO, examining statements made by M.K.'s teachers and medical experts at each CSE. (SD13-17.) In light of testimony from M.K.'s first and second grade teachers and evidence of meaningful progress in study skills, reading, and social skills, the SRO found that the evidence did not provide a basis to overturn the IHO's findings that M.K. was offered a FAPE for the 2021-2022 and 2022-2023 school years. (*Id.*) For the 2023-2024 school year, Plaintiffs argued that M.K.'s program was "predetermined" by the June 2023 CSE. (SD18.) The SRO found that the evidence in the hearing record supports the IHO's findings there was insufficient evidence to establish that the CSE predetermined M.K.'s plan. (*Id.*) The SRO found that the CSE incorporated some of Dr. Marks' recommendations when creating M.K.'s June 2023 IEP. (*Id.*) Accordingly, SRO agreed with the IHO's finding that the 2023 IEP was not predetermined. (*Id.*)

8

Plaintiffs further argued that both offerings from the District for the 2023-2024 school year failed to offer a special class that contained "appropriate peers." (SD19.) Because M.K. never actually enrolled in either program, the SRO found that these claims were merely speculative. (SD20.) Similarly, Plaintiffs raised claims relating to the District's ability to implement several components of the June 2023 IEP. (*Id*.) The SRO found mere doubt is not an appropriate basis for unilateral placement. (SD21.) Finally, the SRO found that the BOCES program offered to M.K. was an ABA program. (*Id*.) Accordingly, the SRO found that M.K. was offered a FAPE for the 2023-2024 academic year. (SD22.) Having found that the IHO correctly determined that M.K. was offered a FAPE for each of the subject school years, the SRO dismissed Plaintiffs appeal. (*Id*.)

### d. *The Limited Supplemental Testimony*

Following the Court's grant of leave to supplement evidence and to amend the Administrative Record (ECF No. 20), an affidavit of testimony from BCBA and Licensed Behavioral Analyst, Nicole Iannarone ("Iannarone") provided her opinion on M.K.'s 2023 IEP and other relevant background on ABA programs. (SPE001-SPE013.) Iannarone testified that M.K.'s 2023 IEP did not describe a valid ABA program. (SPE009.) In Iannarone's view, an IEP that incorporates ABA should explain how ABA strategies are imbedded in the IEP and how they will be enacted throughout the school day. (SPE007.) Iannarone stated that neither the June 2023 IEP nor the September 2023 IEP provided adequate information about the ABA program as they did not describe M.K.'s particular skills and deficits. (SPE010.) She went further to state that the June 2023 provision to offer only one BCBA for six hours per day was both financially and logistically impractical. (SPE009-SPE010.) Finally, Iannarone disagreed with SRO Bates's

9

description of ABA as an "individual service" and his assumption that any BCBA would have formal training working with youth on the autism spectrum. (SPE011-SPE012.)

As a rebuttal witness, the District provided testimony from BCBA and Licensed Behavioral Analyst, Jamie Webber ("Webber") who challenges Iannarone's assertions on several grounds. (SDE001.) First, Webber addresses Iannarone's claim that neither 2023 IEP constitutes an "ABA program." (SDE003.) Webber argued that ABA is not a "program," but a methodology that may be implemented through a variety of programs. (*Id.*) Furthermore, Webber stated that it is not required that ABA methodologies be explicitly stated on an IEP. (SDE003-SDE004.) Second, Webber disagreed with Iannarone's assertion that a BCBA could not provide M.K. with individual services throughout the school day. (SDE004.) In Webber's view, such services are directly in line with what BCBAs are trained to do. (SDE004-SDE005.) Webber also pointed out that the IEP does not mandate full 1:1 ABA instruction throughout the day. (SDE004-SDE005.) Rather, the IEP contemplates full-day behavioral services. (SDE004-SDE005.) Third, Webber challenged Iannarone's claim that ABA strategies, data analytics, or training should be included throughout the IEP. (SDE005.) Webber contends that IEPs provide program recommendations, related services, and goals to students with special needs. (*Id.*) They do not need to describe the many ways in which ABA methodologies may be implemented. (*Id.*) Finally, Webber disagreed with Iannarone's claim that SRO assumed that any BCBA would have formal training working with children on the autism spectrum. (*Id.*) Rather, schools look to assign a properly trained person to meet the specific needs of that child. (*Id.*) For these reasons, Webber found that M.K.'s 2023 IEPs may be appropriately implemented through the use of ABA methodologies. (SDE006.)

## THE LEGAL FRAMEWORK

The IDEA states "[a] free appropriate public education is available to all children with disabilities residing in the State between the ages of 3 and 21, inclusive, including children with disabilities who have been suspended or expelled from school." 20 U.S.C.A. § 1412(a)(1)(A); *see also Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 379 (2d Cir. 2003) (quoting 20 U.S.C. § 1412(a)(1)(A) ("The IDEA offers federal funds to states that develop plans to assure 'all children with disabilities' a 'free appropriate public education'")). Likewise, schools are required to provide students with disabilities with an IEP each year. *Grim*, 346 F.3d at 379 (citing § 1414(d)). That IEP must provide "services that are 'individually designed to provide educational benefit' to a child with a disability." *Id.*

> An IEP is a written statement that sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives. Under the IDEA, for a child's IEP to be adequate, it must be likely to produce progress, not regression, and must afford the student with an opportunity greater than mere trivial advancement. However, it need not furnish every special service necessary to maximize each handicapped child's potential.

*A.K v. Westhampton Beach Sch. Dist.*, No. 17-CV-0866 (GRB) (SIL), 2021 WL 621236, at *8 (E.D.N.Y. Jan. 6, 2021), *report and recommendation adopted sub nom. Killoran v. Westhampton Beach Sch. Dist.*, No. 17-CV-00866, 2021 WL 665277 (E.D.N.Y. Jan. 25, 2021) (internal citations and quotations omitted) (cleaned up).

If a parent believes that their child's IEP is insufficient or deficient, they may challenge the IEP before an IHO. *Id.* (quoting 20 U.S.C. § 1415(f)). If that decision is not satisfactory, they may further appeal to the SRO. *See* 20 U.S.C. § 1415(g); *A.K*, 2021 WL 621236, at *9 (same). Following review and determination by the SRO, an aggrieved party can further appeal by bringing a civil action "in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy." 20 U.S.C. §1415(i)(2)(A); *see also Killoran on behalf of A.K. v. Westhampton Beach Sch. Dist.*, No. 19-CV-3298(JS)(SIL), 2021

11

WL 4776720, at *6 (E.D.N.Y. Oct. 11, 2021), *aff'd sub nom. Killoran v. Westhampton Beach UFSD*, No. 21-2647, 2023 WL 4503151 (2d Cir. July 13, 2023) (explaining that pursuant to IDEA, the final decision by the SRO can be challenged in federal court).

To that end, the IDEA provides the right to bring a civil action and states:

Any party aggrieved by the findings and decision made under subsection (f) [Impartial due process hearing] or (k) [Placement in alternative educational setting] who does not have the right to an appeal under subsection (g), and any party aggrieved by the findings and decision made under this subsection, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy. … In any action brought under this paragraph, the court-- (i) shall receive the records of the administrative proceedings; (ii) *shall hear additional evidence at the request of a party*; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

20 U.S.C. § 1415(i)(2)(A), (C) (emphasis added).

In IDEA cases such as this one, a motion for summary judgment functions as an appeal from the SRO's administrative decision below. … In determining the District's motion, the Court is called upon to conduct an independent review of the administrative record, along with any additional evidence submitted by the parties – of which there is none – and to determine by a preponderance of the evidence whether the IDE[]A's strictures have been satisfied.

*N.B. v. Sachem Cent. Sch. Dist.*, No. 24-CV-4758 (AYS), 2026 WL 820697, at *4 (E.D.N.Y. Mar. 25, 2026) (internal citations and quotations omitted); *see also A. S. on behalf of A.S. v. New York City Dep't of Educ.*, No. 24-CV-9689 (ER), 2026 WL 1079380, at *18 (S.D.N.Y. Apr. 21, 2026) (internal citation omitted) ("Though the parties in an IDEA action may call the procedure 'a motion for summary judgment,' the procedure is in substance an appeal from an administrative determination, not a summary judgment [motion]. The existence of a genuine issue of material fact will not result in a denial.")

"[T]he role of the federal courts in reviewing state educational decisions under the IDEA is 'circumscribed.'" *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 112 (2d Cir. 2007) (citations omitted). A court's review of these decisions "requires a more critical appraisal of the agency determination than clear-error review but falls well short of complete *de novo* review." *L.O. ex rel. K.T. v. N.Y. City Dep't of Educ.*, 822 F.3d 95, 108 (2d Cir. 2016) (internal citations

omitted).  While a reviewing court must conduct "an independent review of the record," and make a determination based on a "preponderance of the evidence," this review "is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *E.S. ex rel. B.S. v. Katonah-Lewisboro Sch. Dist.*, 487 F. App'x 619, 622 (2d Cir. 2012) (internal citations and quotation marks omitted). Federal courts are expected to "give 'due weight' to these proceedings, mindful that the judiciary 'lack[s] the specialized knowledge and experience necessary to resolve persistent and difficult questions of education policy.'" *Gagliardo*, 489 F.3d at 113 (internal citation omitted).

Accordingly, reviewing courts "'defer to the final decision of the state authorities,' even where 'the reviewing authority disagrees with the hearing officer.'" *A.C. ex rel. M.C. v. Bd. of Educ. of the Chappaqua Cent. Sch. Dist.*, 553 F.3d 165, 171 (2d Cir. 2009) (quoting *Karl ex rel. Karl v. Bd. of Educ. of Geneseo Cent. Sch. Dist.*, 736 F.2d 873, 877 (2d Cir. 1984)). "Deference is particularly appropriate when the state officer's review 'has been thorough and careful,' but we still do not 'simply rubber stamp administrative decisions.'" *R.E. v. New York City Dep't of Educ.*, 694 F.3d 167, 184 (2d Cir. 2012) (quoting *Walczak v. Fla. Union Free Sch. Dist.,* 142 F.3d 119, 129 (2d Cir. 1998)). Nonetheless, the SRO's or IHO's factual findings "must be 'reasoned and supported by the record' to warrant deference." *M.H. v. New York City Dep't of Educ.*, 685 F.3d 217, 241 (2d Cir. 2012) (quoting *Gagliardo*, 489 F.3d at 114). "The reviewing court should reject the SRO's conclusions 'if it finds they are not supported by a preponderance of the evidence.'" *S.S. v. New York City Dep't of Educ.*, No. 25-CV-0217 (LJL), 2026 WL 636850, at *4 (S.D.N.Y. Mar. 6, 2026) (quoting *W.A. v. Hendrick Hudson Central Sch. Dist.*, 927 F.3d 126, 149 (2d Cir. 2019)). "Deference to administrative proceedings is 'particularly warranted when the district court's decision is based solely on the administrative record.'" *L.W.*

13

*v. New York City Dep't of Educ.*, 825 F. Supp. 3d 246, 255 (S.D.N.Y. 2026) (internal citation omitted).

It is with these principles in mind that the Court reviews the instant application.

## **DISCUSSION**

Plaintiffs enrolled M.K. into Imagine Academy and now seek tuition reimbursement due to the alleged failures that the District implemented and proposed during the subject school years. The crux of the cross-motions are as follows. *First*, whether the District provided a FAPE for M.K. during the relevant school years. *Second*, assuming the District did not, are Plaintiffs entitled to full tuition reimbursement?

In considering the cross-motions, the Court applies the three-step *Burlington/Carter* analysis. *W.A.*, 927 F.3d at 146. The Court first must determine whether the school district provided a FAPE; if it did not, the court moves on to the second and third steps, "under which the parents bear the burden of showing that their unilateral private school placement was appropriate for the child's needs and that the equities work in their favor." *Id.* (citation omitted). "Under the first prong of the Burlington/Carter test, there is a 'two-part inquiry' for reviewing administrative determinations as to the provision of a FAPE. First, the reviewing court determines whether 'the State complied with the procedures set forth' by the IDEA; second, the court determines whether the IEP 'developed through the Act's procedures was reasonably calculated to enable the child to receive educational benefits.'" *M.S. on behalf of B.D.S. v. New Hyde Park-Garden City Park Union Free Sch. Dist.*, No. 20-CV-3380 (JMA)(ARL), 2022 WL 903099, at *6 (E.D.N.Y. Feb. 3, 2022), *report and recommendation adopted sub nom. M.S. v. New Hyde Park-Garden City Park Union Free Sch. Dist.*, No. 20-CV-3380 (JMA)(ARL), 2022 WL 903064 (E.D.N.Y. Mar. 28, 2022) (internal citations omitted).

## I.   Did the District fail to provide M.K. with a FAPE?

The Second Circuit observed that,

> [n]ot every procedural error will render an IEP legally inadequate. Relief is warranted only if procedural inadequacies (I) impeded the child's right to a [FAPE]; (II) participate in the decision-making process regarding the provision of [a FAPE] to the parents' child; or (III) caused a deprivation of educational benefits.

*R.B. v. New York City Dep't of Educ.*, 589 F. App'x 572, 574–75 (2d Cir. 2014) (internal citations and quotation marks omitted).

> [Similarly, a] school district complies with IDEA's substantive requirements if a student's IEP is reasonably calculated to enable the child to receive educational benefit[s]. A school district is not, however, required to furnish every special service necessary to maximize each handicapped child's potential. Rather, a school district fulfills its substantive obligations under the IDEA if it provides an IEP that is likely to produce progress, not regression, and if the IEP affords the student with an opportunity greater than mere trivial advancement.

*Id.* at 576 (internal citations and quotation marks omitted).

### A. *Procedural Adequacy*

"A procedural error will only render an IEP legally inadequate if the alleged inadequacies, '(i) impeded the child's right to a [FAPE]; (ii) significantly impeded the parents' opportunity to participate in the decision making process regarding the provision of a [FAPE] to the parents' child; or (iii) caused a deprivation of benefits.'" *M.S. on behalf of B.D.S.*, 2022 WL 903099, at *7 (citations omitted). The IDEA "does not ... require states to develop IEPs that maximize the potential of handicapped children," the IEP 'must aim to enable the child to make progress.'" *F.L. v. Bd. of Educ. of Great Neck U.F.S.D.*, 274 F. Supp. 3d 94, 119 (E.D.N.Y. 2017), *aff'd sub nom. F.L. v. Bd. of Educ. of Great Neck Union Free Sch. Dist.*, 735 F. App'x 38 (2d Cir. 2018). Indeed, the "IDEA requires that school districts provide the parents of a disabled child the opportunity to meaningfully participate in the CSE process. ... Therefore, 'as long as

the parents are listened to, this burden is met even if the [school district] ultimately decides not to follow the parents' suggestions.'" *F.L.*, 274 F. Supp. 3d at 116.

Here, there were no arguments advanced or evidence proffered of any procedural violations. The record and briefs are devoid of such arguments. (*See* ECF Nos. 27-2 at 8-9; 27-4 at 2-3; 27-5 at 8; *see also generally*, 29-2.)  Furthermore, a careful review of the Administrative Record demonstrates that the Plaintiffs were not subject to procedural violations as they were provided with the IEPs and participated in the CSE process. (*See* S14, PE14, IE44; *see also* ECF No. 29-2 at 30.) And, in any event such "violations must be considered cumulatively." *N.K. v. New York City Dep't of Educ.*, 961 F. Supp. 2d 577, 588 (S.D.N.Y. 2013) (internal citation omitted) (finding that "Plaintiffs have failed to identify even a single procedural violation that caused any harm …. [and] even considered cumulatively, the alleged procedural violations did not result in the violation of a FAPE").

### B. *Substantive Adequacy*

"[A] school district fulfills its substantive obligations under the IDEA if it provides an IEP that is likely to produce progress, not regression, and if the IEP affords the student with an opportunity greater than mere trivial advancement." *T.P. ex rel S.P. v. Mamaroneck Union Free Sch. Dist.*, 554 F.3d 247, 254 (2d Cir. 2009) (internal citation omitted). However, it is well established that the District is "not required furnish[ ] every special service necessary to maximize each handicapped child's potential." *MB v. City Sch. Dist. of New Rochelle*, No. 17-CV-1273 (KBF), 2018 WL 1609266, at *9 (S.D.N.Y. Mar. 29, 2018) (internal citations omitted); *Diaz v. Aviles-Ramos*, No. 24-CV-09340 (JLR), 2025 WL 2172298, at *3 (S.D.N.Y. July 31, 2025) (same); *Melendez v. Banks*, No. 21-CV-1243 (MKB), 2023 WL 6283108, at *1 (E.D.N.Y. Sept. 26, 2023) (same).

"For example, the IEP does not require any particular type of science or social science curriculum, a specific travel training program, or that [M.K.] be placed at a school where []he will be allowed a specific level of independence." *Y.F. v. New York City Dep't of Educ.*, 659 F. App'x 3, 5 (2d Cir. 2016); *see also M.T. v. New York City Dep't of Educ.*, 165 F. Supp. 3d 106, 121 (S.D.N.Y. 2016) (discussing that an IEP that "merely lists" an ABA instruction as one of the methods rather than mandating such, was found appropriate and finding that if the Court concluded a FAPE which "could not guarantee E.T. would receive the ABA instruction mentioned in E.T.'s IEP would be to rewrite the student's IEP and engage in speculation").

Having reviewed the Administrative Record, it is recommended that M.K. was provided with a FAPE for the subject school years as further outlined below.

### a. *First Grade (2021-2022)*

Plaintiffs argue that the District failed to provide M.K. a FAPE for the 2021-2022 school year. (ECF No. 29-2 at 4.) Plaintiffs further argue that under his kindergarten IEP, M.K. made de minimis progress and that when a child fails to make progress under an IEP, a school cannot offer an identical or near identical IEP the following year. (*Id.* at 4-5.) M.K. was provided 1:1 paraprofessional support, occupational therapy three times every six days, and additional resources under the IEP; yet he still could not learn very basic skills or recall information learned from the previous week. (*Id.* at 5.) Thus, Plaintiffs assert that the IHO disregarded evidence of M.K.'s de minimis progress in kindergarten, his unique disabilities and specific needs when assessing the adequacy of his first-grade IEP. (*Id.* at 6-7.)

The District argues that the IEP for first grade included modifications based on the annual review CSE. (ECF No. 27-2 at 10-11.) Indeed, this is evidenced by the IEP. (DE127-130.) Moreover, English provided testimony of how the accommodations were implemented in her

17

classroom, which the IHO credited when determining that M.K. received a FAPE for the subject school year. (*Id.* at 11.)

Reviewing the IHO's findings, the Court also finds that the District provided M.K. with an FAPE for the 2021-22 school year. As demonstrated by M.K.'s 2021-22 progress report and supported by English's testimony, M.K. made meaningful progress under his 2021-22 IEP. (DE201-DE213; I10-11; T311-T319.) Plaintiffs' argument that English's testimony should not be admitted on the grounds that she testified on M.K.'s 2021-22 IEP during the first grade rather than at the time that the IEP was created, is misguided. (ECF No. 29-2 at 7-9.) It is well known that retrospective testimony should not be considered when discussing a service not including within an IEP. *See R.E.*, 694 F.3d at 186 ("We now adopt the majority view that the IEP must be evaluated prospectively as of the time of its drafting and therefore hold that retrospective testimony that the school district would have provided additional services beyond those listed in the IEP may not be considered in a *Burlington/Carter* proceeding."); *M.B. v. Katonah-Lewisboro Union Free Sch. Dist.*, No. 24-CV-1745 (KMK), 2025 WL 2773358, at *15 (S.D.N.Y. Sept. 25, 2025). Instead, such testimony may be used to explain or further clarify what is already in the IEP. *See id.; see also MN on behalf of EN v. Katonah Lewisboro Sch. Dist.*, No. 19-CV-6793 (CS), 2020 WL 7496435, at *18 (S.D.N.Y. Dec. 21, 2020) (internal citation omitted) ("the Second Circuit has rejected a 'rigid 'four corners' rule prohibiting testimony that goes beyond the face of the IEP,' and permits testimony 'that explains or justifies the services listed in the IEP'"). English's testimony falls squarely within the parameters of admissible testimony. Her testimony provided insight into how the IEP was being implemented and whether M.K. was progressing throughout the school year. (T311-T337.) Thus, English did not retroactively state that the 2021-2022 IEP should have included additional services. Accordingly, M.K.'s progress

18

report and English's testimony support the IHO and SRO's finding that M.K. was offered a FAPE for the 2021-2022 academic year.

### b. *Second Grade (2022-2023)*

Plaintiffs similarly argue that because the District failed to make meaningful changes to M.K.'s first grade IEP, it had an obligation to make such changes when creating an IEP for the 2022-2023 academic year. (ECF No. 29-2 at 9.) In Plaintiffs' view, the SRO's assessment relied too narrowly on the four goals the M.K. did achieve without giving due examination to the sixteen he failed to achieve based on English's testimony. (*Id.* at 11-12.) Plaintiffs find that M.K. did not receive adequate 1:1 instruction, was not provided a behavior intervention plan ("BIP") before April 2023, and was, in effect, offered the same IEP as the 2021-2022 academic year. (*Id.* at 13-14.)

However, the District argues that M.K. made meaningful progress under the 2022-23 IEP. (ECF No. 27-2 at 12.) According to M.K.'s second grade teacher, Mezrahi, M.K. made meaningful progress in academics, group participation, and behavior regulation. (*Id.*) Additionally, M.K. received layered support from behavior services provider Kathleen Marino ("Marino") who provided approximately five hours of behavior-consultation to M.K.'s teacher and aides. (*Id.* at 13.) Also, the District argue in response to Plaintiffs' assertion regarding the narrow view of the four goals achieved out of the twenty, that "it has never been the precedent in this Court that a district must demonstrate full mastery of each annual goal to demonstrate it provided a FAPE." (ECF No. 29-3 at 6.)

The Court finds the testimony of both Mezrahi and Marino along with M.K.'s progress toward his goals in fact establish that M.K. was offered a FAPE for the 2022-23 academic year. A school satisfies its requirements under IDEA when it offers a student an IEP that enables a

student to make more than minimal progress. *T.P. ex rel S.P.*, 554 F.3d at 254. Here, the District considered recommendations from English when planning M.K.'s second grade IEP and offered M.K. a 1:1 teaching assistant, functional communication training and differentiated work. (I12-13.) The services and BIP offered to M.K. in 2022-2023 were tailored to his needs in a manner designed maximize the student's chances of making progress toward his goals. (DE150-DE153, DE154-DE155; T436-T440, T445-T447). As confirmed by the testimonies provided by Mezrahi and Marino, the District implemented a BIP in accordance with the recommendations of the April 2023 CSE. (I14-15.) There is no basis to second-guess or reverse the findings of the IHO and the SRO that M.K.'s second grade IEP was reasonably calculated and that M.K. was making modest progress toward his goals under this plan. Accordingly, the Court recommends finding that M.K. was offered a FAPE for the 2022-23 academic year.

In light of the above recommendation that a FAPE was provided for the 2021-2022 and 2022-2023 school years, the Court need not determine reimbursement sought by Plaintiffs.

### c. *Third Grade (2023-2024)*

Plaintiffs further argue that the District failed to provide M.K. with a FAPE for the third grade despite a "clear consensus" between Plaintiffs and the CSE that an ABA program would address his needs properly following Dr. Marks' evaluation. (ECF No. 29-2 at 15-16.) This was a result of M.K.'s mother's concerns that there was poor progress and requested that out-of-district applications be sent. (*Id.* at 15.) Plaintiffs allege that despite the clear consensus, there was little evidence, some of which was retrospective testimony presented to the SRO, that the District offered an ABA program. (*Id.* at 16.) In simple terms, Plaintiffs argue that the IEP did not mention ABA and that the IHO and SRO overlooked that the IEP did not list the essential components of an ABA program. (*Id.* at 22, 25.) The June 2023 IEP included an 8:1:2 program,

which Dr. Marks opined that the class size may be too large for M.K. to make meaningful progress. (*Id*. at 18-19.) Likewise, the September 2023 IEP included a recommendation to an out-of-district BOCES program but according to Plaintiffs, it was more restrictive than the June 2023 IEP. (*Id*. at 19-20.)

Based on the above, on August 22, 2023, as no alternatives were provided and Plaintiffs were not offered the September IEP yet, which was still not appropriate in their view, that is when Plaintiffs sent the ten-day notice letter that they would be placing M.K. at Imagine. (*Id.* at 20.) That was because it was not until August 30, 2023, that M.K.'s parents received the acceptance letter from BOCES. (*Id.*)

However, the District argues that the BOCES school was an ABA based program that had smaller classes and other services, which Owen testified to. (ECF No. 29-3 at 11; *see also* T393-T395, T406, T419-21.) This testimony was credited by both the IHO and SRO. (ECF No. 29-3 at 11.) The District further argues that the IDEA and the Second Circuit does not require schools to adopt nor expressly state ABA methodology in its IEPs. (*Id.* at 13-14.) And, in any event, the SRO found that the combination of smaller classes with the other services was consistent with Dr. Mark's recommendations. (ECF No. 27-2 at 19.)

First, the testimony offered by Owen was not retrospective. Owen clarified and further explained what the school had to offer and *how* their services were in line with ABA methodology. (T390, T393.) This was not retrospective evidence that added new services but rather, it was a further description of what was already outlined in the offered IEP. *See MN on behalf of EN*, 2020 WL 7496435, at *18.

Indeed in *M.B.*, the SRO relied on the child's special education teacher who testified as to the details about an additional service that was to be provided by another teacher due to the

21

child's needs. 2025 WL 2773358, at *15. The Court found that because this service was included in the IEP then the "testimony provided further detail about a service listed in the challenged IEP, the Court concludes that it does not implicate the bar on retrospective testimony." *Id.* at *16; *see id.* (quoting and citing to *S.K. v. City Sch. Dist. of City of New York*, No. 17-CV-6043, 2020 WL 1244473, at *14 (S.D.N.Y. Mar. 13, 2020) (distinguishing between testimony that qualified as "retrospective" because it described "services, resources, or personnel that [the institution] did not have or offer at the time of Plaintiff's placement decision, but could speculatively have obtained if [the student] were to enroll," and "services, resources, and personnel that [the institution] offered at the time [the plaintiff] was making her decision and that [she] would have reasonably known about")). Likewise, in *MN on behalf of EN*, a social worker testified to a program that was available to the student and the Court found that "[s]uch testimony [wa]s permissible because EN's IEPs explicitly stated that she would receive daily BASIS services both before and after school … and [t]he added details regarding the exact hours BASIS providers are available did not go beyond what was provided for in EN's IEP." 2020 WL 7496435 at *18. The Court further collected cases on the proposition that additional details on recommendations do not change an IEP nor "contradict" what was informed to the parents at the time. *Id.* at *18-19. All that the social worker testified to was provided for in the IEP and "even if [the social worker] exceeded her bounds by discussing some topics that were not discussed at a CSE meeting or written in EN's IEP, her testimony is not dispositive on the issue of whether the District-recommended placement offered EN a FAPE." *Id.* at *19.

The IHO and SRO found the testimony of Owen credible, and the Court finds no reason to disturb that finding nor is there an indication that true retrospective testimony was provided.

22

Second, the Second Circuit addressed the very issue of a school's lack of incorporating ABA therapies for a child. *A.M. v. New York City Dep't of Educ.*, 845 F.3d 523, 544-45 (2d Cir. 2017). In *A.M.*, the Court found that there was no evidence at the CSE meeting that would suggest the school could use another methodology besides ABA methods that could significantly help the child. *Id.* at 544. Moreover, the school did not have any evaluations done that would contradict the above. *Id.* at 545. Thus, the Court stated "[w]hile a private school's preferred methodology does not bind the CSE in formulating a student's IEP, where, as here, the consensus of the evaluative materials and 'all witnesses familiar with [the child],' specifically recommend the continued need for 1:1 ABA therapy and support for the child to progress, and the DOE does not point to any evidence sufficient to counter these opinions and recommendations, the CSE was bound, at a minimum, to require some level of ABA support in a 1:1 classroom setting in order to establish the adequacy of the IEP." *Id.* (internal citations omitted).

Here, when reevaluating the June 2023 IEP, the District incorporated Dr. Mark's recommendations, noting that the new out-of-district BOCES school could provide the needs of M.K. (DE8-9.) This is precisely what Owen's testimony clarified. With that, the IHO and SRO found that the District incorporated ABA type methodologies and that the IEP would enable M.K. to make progress in the new placement. (I19-20, I26-27; SD6, SD8, SD21-22.) *See A.H. v. New York City Dep't of Educ.*, No. 24-CV-4828 (JGLC), 2025 WL 2773252, at *10 (S.D.N.Y. Sept. 29, 2025) ("While the IEP did not expressly mention ABA, Popel credibly testified it was not ordinary practice to write ABA as recommendations.") Moreover, in *A.H.*, the Court found that "[w]hile the IEP did not explicitly use the term 'ABA,' … it included a recommendation for schooling and programming that addressed substantively similar issues as ABA would target,

23

and highlighted the same concerns that Dr. Mukherjee noted in her evaluation." *Id.* at \*9. As the SRO considered the above testimony and more, deference was given *Id.* Therefore, the Court here too should give deference to the IHO and SRO.

Importantly, "[p]arents dissatisfied with a district's recommended school placement for their child may unilaterally place their child in a private school and seek tuition reimbursement from the district. However, parents who choose to place their children in a private school 'during the pendency of review proceedings, without the consent of state or local school officials, *do so at their own financial risk.*'" *Garzon as Parent & Nat. Guardian of M.G. v. Aviles-Ramos*, No. 25-CV-5284 (JGK), 2026 WL 1623049, at \*3–4 (S.D.N.Y. June 5, 2026) (emphasis added) (internal citations omitted). Here, the District reevaluated the IEP in September of 2023 (SD21), whereas Plaintiffs had already signed a contract with Imagine on August 16, 2023 (PE57-59) based on the June IEP. While the Plaintiffs relied on the June IEP as that was the only IEP available and provided the ten-day notice, the District nonetheless received the acceptance letter from BOCES on August 30, 2023 (DE222). Plaintiffs argue that the September CSE meeting and then IEP was delayed and late and thus, only the June IEP was relevant when making the decision to place M.K. at Imagine. (ECF No. 29-2 at 26.) The District in response argues that once BOCES sent the acceptance letter, it "promptly reconvened the CSE on September 6, 2023, the second day of school, to recommend a 6:1:2 placement," and that Plaintiffs "cannot use the ten-day notice requirement to bar the District from showing that it did exactly what IDEA encourages, which is to listen to parents, revisit its offer, and refine the placement before the school year proceeded." (ECF No. 29-3 at 12, 13 n.2.) Notably, the program offered at BOCES would have addressed M.K.'s needs because it offered 6:1+2 program as well as 1:1 services on multiple days per week for speech and language therapy, occupational therapy, physical therapy

24

and vision services. (DE222.) The District's assertion that it moved quickly upon acceptance of the new program to inform Plaintiffs and followed what the IDEA encourages coupled with the what the program offered indicates that an FAPE was offered. Indeed, Plaintiffs could have chosen to accept this but instead continued to rely on the June 2023 IEP and have M.K. stay at Imagine. And, as the SRO found, Plaintiffs' mere speculation that the programs offered for this school year would not be provided, is not enough to find that a school would not adhere to the IEP. (SD20-21.) Therefore, the IHO and SRO credited the testimony provided, reviewed the record before them and concluded that an FAPE was provided for the year of 2023-2024.

Reviewing the supplemental evidence proffered, it appears that had the IHO and SRO had the newly added affidavits before them, it would have concluded the same. That is because, Iannarone opined that the latest IEPs did not properly include ABA programs. (*See* SPE008-009.) Whereas Webber concluded not only that it is not ABA programs but rather ABA methodology that is used, and the IEP did include such methodology even if it was not explicitly written. (SDE002-004) ("At the outset, it must be stressed I am not aware of any program on the continuum of special education services under the Regulations of the Commissioner of Education which constitutes an ABA program. Rather, ABA methodology may be implemented in a variety of programs and, in my experience, does not need to be specifically stated on an IEP in order to be implemented in a school setting. ABA, therefore, is not a program in and of itself but rather, is a methodology to be implemented by service providers in virtually any program to progress towards achievement of IEP goals, recommended by a CSE.")

And, as a final note Iannarone's testimony is the kind of retrospective evidence that Plaintiffs argue against. (ECF No. 29-3 at 16-17.) Indeed, Iannarone discussed what she would have done differently in an IEP rather than clarifying what was in the IEP. (*See* SPE006-009.)

Additionally, the District asserts that Iannarone discussed at length what an ABA program is in her professionally opinion but the case law and the IDEA that the District follows does not require the District "to spell out in the IEP every ABA assessment tool…." (ECF No. 29-3 at 16-17.) Nor has the Court *sua sponte* found such a requirement.

Accordingly, the record before the Court illustrates that Plaintiffs were provided with a FAPE for the subject school years and deference must be given to the IHO and the SRO as the educational experts.

## II.   Whether Imagine was an Appropriate Private Placement

Given the Court's above recommendations that the IEPs were procedurally and substantively sound, the Court need not determine whether the private placement was appropriate. Indeed, this is the approach that many Courts have taken. *See e.g.*, *T.P. ex rel S.P.*, 554 F.3d at 254 (internal citations omitted) ("Because we find that S.P.'s 2004–2005 IEP was neither procedurally flawed nor substantively deficient, we need not reach the issues whether the additional services provided by the parents were appropriate, or whether equitable considerations affect relief"); *M.S. on behalf of B.D.S.*, 2022 WL 903099, at *10 (Report & Recommendation adopted in full) ("Having determined that there is no basis to overturn the SRO's determination that the District offered B.D.S. a FAPE for the 2019-2020 school year, the undersigned need not address whether the parents' alternative private placement was appropriate or if the equities favor reimbursement"); *N.K.*, 961 F. Supp. 2d at 593 ("Therefore, the Court need not reach Plaintiffs' claims regarding the propriety of their unilateral placement of J.K. at the Rebecca School").

Thus, the Court declines to address this prong of the *Burlington/Carter* test and recommends that Judge Azrack need not address it either.

## CONCLUSION

For the reasons stated herein, the undersigned respectfully recommends that the Defendant's Motion for Summary Judgment (ECF No. 27) be **GRANTED** and Plaintiffs' Motion for Judgment on the Pleadings (ECF No. 29) be **DENIED**, because the Court's "limited standard of review requires some deference to the judgment of the school district, and does not permit the Court to simply defer to the well-intentioned interest of loving parents." *M.T.*, 165 F. Supp. 3d at 122.

In light of this recommendation, the oral argument scheduled for August 21, 2026, is now **cancelled**.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served through ECF on all counsel. Any written objections to this Report and Recommendation must be filed within fourteen (14) days of service of this Report.  28 U.S.C. § 636(b)(1) (2006 & Supp. 2011); Fed. R. Civ. P. 6(a), 72(b); *see also Nambiar v. The Central Orthopedic Group LLP*, No. 24-1103 (2d Cir. Oct. 28, 2025) (addressing timing and scope of objections to Reports and Recommendations). Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days precludes further review of this Report and Recommendation either by the District Court or the Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's

27

decision"); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d

Cir. 2010) (summary order) (same).


Dated:  Central Islip, New York.
       July 30, 2026

**RESPECTFULLY RECOMMENDED**,


/S/ **James M. Wicks**

JAMES M. WICKS
United States Magistrate Judge
